Frank Dunn (J. V. Tackaberry, Intervener), v. J. S. Taylor
et al.

No. 1867. Decided November 11, 1908.

1.—Limitation—Continuous Possession.

Evidence considered and held insufficient to show such uninterrupted posses-sion, use, etc., of enclosed land for ten years as would establish title by limi-tation. (Pp. 83–85). ·

2.—Same—Evidence.

Testimony that persons had been given permission to occupy an enclosed pas-ture, promising to do so and take care of it for the owner during intervals when it was not occupied by tenants, was not sufficient to show that it was actually in possession and use by such persons during such intervals. (P. 85.)

3.—Same—Burden of Proof.

The burden being on defendants, relying on the occupancy of successive poss-essors to establish title by limitation, to show that such possession was contin-uous and unbroken, it was incumbent on them to show facts from which the conclusion of continuity might be deduced affirmatively. Intervals of interrup-tion of from four to six months, or even a year were too great to be disre-garded or to be submitted to the jury to determine whether such should be held the reasonable time allowed by law for change of occupants, in the ab-sence of proof of other acts of dominion in the meantime. (Pp. 85, 86.)

4.—Adverse Possession—Cultivation and Use.                                ⠂

The statute requiring cultivation, use or enjoyment of land to constitute the "actual and visible appropriation" required by the statute of limitation is not met by mere inclosure without use. (P. 86.)

5.—Limitation—Possession, etc., Under Recorded Deed.

Evidence considered and held insufficient to establish title by limitation from possession, use, etc. and payment of taxes under a recorded deed for five years. (P. 86.) ·

6.—Practice on Appeal.

On reversal of a judgment recovering land because of the insufficiency of the evidence to show title by limitation, on which the recovery was based, the Supreme Court will remand for new trial where it appears that other evidence may be forthcoming which would change the result. (Pp. 86, 87.)

7.—Adverse Possession—Enclosure by River—Evidence.

Fencing on three sides, with the bank of a river constituting the fourth in-closing line, though it was not a perfect barrier against stock, may constitute sufficient enclosure to define the limits of possession of lands used as a pasture, and evidence that the river was so used as a part of the barrier by owners of other pastures above and below was admissible as marking the character of the possession by such enclosure. (P. 87.)

8.—Possession Under Recorded Deed.

Possession under a deed not recorded can not be connected with previous possession under a recorded deed to establish limitation under the five years statute; but evidence was admissible to show that a deed not acknowledged and recorded for two years after its date was not in fact executed until about the date of its acknowledgment. (P. 87.)

9.—Adverse Possession—Enclosure of 5000 Acres.

The enactment by the statute of 1891 (Rev. Stats., art. 3345) that the peaceable and adverse possession contemplated by article 3343 (the Ten Years Statute) shall not be accomplished by the enclosure of land within the limits

of a fenced tract of 5000 acres or more "unless said land so belonging to another be segregated and separated by a substantial fence from said lands connected therewith" applies only to possession under such article 3343, and does not affect the rule as to possession, etc., under recorded deed required by the Five Years Statute. (Pp. 87, 88.)

**10.—Same.**

To constitute adverse possession under article 3343 (Ten Years Statute) of lands of another comprised within an enclosure of 5000 acres or more, such tract must be segregated by its own inclosure, as required by article 2246, though claimed by the possessor under a recorded deed describing it by metes and bounds. (Pp. 88, 89.)

Error to the Court of Civil Appeals for the Fourth District in an appeal from Dimmit County.

Taylor and wife sued Dunn for the recovery of land. Tackaberry, Dunn's vendee, intervened. Plaintiffs recovered and the judgment was affirmed on appeal by defendant and intervener, who thereupon obtained writ of error.

*N. A. Rector,* for plaintiffs in error.

The court erred in charging the jury that, in regard to the issue of ten years limitation, if the parties claiming such limitation had a deed on record it was immaterial whether or not the enclosure in which the land in controversy was located exceeded 5000 acres of land. Kent v. Cecil, 25 S. W., 715.

We are aware that this court in the following decisions has held that the above statute does not apply where the occupant claims under deed on record, to wit: Smith v. Kenney, 54 S. W., 801, and Cunningham v. Mathews, 57 S. W., 1115. Without argument we challenge the correctness of these decisions, and submit that this court was correct when it first construed said statute in the case of Kent v. Cecil.

A natural stream that is for the greater part of the year dry, or which stands in holes, which is unfenced, and across which cattle could and did pass, and into the bed of which they could and did go, and up and down which they could and did go, and could and did pass out into other and different pastures, either on the same side or on the opposite side thereof, is not in law a barrier, and does not, in connection with lines of fences running out from it, and which are connected with a string ·of fence on the back side, constitute an enclosure. Polk v. Beaumont Pas. Co., 26 Texas Civ. App., 242; Vineyard v. Brundrett, 17 Texas Civ. App., 147.

In order to support the defense of limitation under either five or ten years peaceable and adverse possession, the party must show a continuous and unbroken actual possession of the premises for the required period of time, coupled with the use, enjoyment or cultivation of the same. A break in the possession of two or more occupants, whose occupancy must be tacked to complete the period, consisting of four, five, six or eight months, is fatal to the defense of limitation. Lawless v. Wright, 39 Texas Civ. App., 26; Overand v. Menczer, 83 Texas, 122; Tarleton v. Kirkpatrick, 1 Texas Civ. App.,

107; Pendleton v. Snyder, 5 Texas Civ. App., 427; Wilson v. Nugent, 91 S. W., 241; Phillipson v. Flynn, 83 Texas, 584; Whitehead v. Foley, 28 Texas, 15.

Fencing land, without actual use, occupation and enjoyment, will not support limitation. Wilson v. Nugent, 91 S. W., 241; Buster v. Warren, 35 Texas Civ. App., 644; Niday v. Cochran, 93 S. W., 1027.

In order to support the plea of five years limitation, not only must the party have peaceable adverse possession, using, cultivating or enjoying the same and paying all taxes thereon for the full period, but at the same time such possession must be under deed or deeds duly registered, and a failure to record deeds will be fatal to the defense. Sorley v. Matlock, 79 Texas, 307; Gillum v. Fuqua, 61 S. W., 939.

A deed is presumed to have been executed on the day of its date, in the absence of any evidence to the contrary. Devlin on Deeds, sec. 265; 9 Am. & Eng. Enc. of Law, 152.

It was error for the court to charge at all on suspensions of possession and delays in recording deeds. The jury should not have been turned loose to pass upon the reasonableness or unreasonableness of such breaks. But having permitted the jury to pass upon same, the court erred in refusing to limit them to such breaks in possession as were necessary for one tenant to go in on another's going out. Such breaks in possession as were occasioned by Vandervoort's inability to secure tenants ought not to have been excused by the court or jury. The mere enclosure of premises does not constitute adverse possession. The peaceable and adverse possession mentioned in the statute must be accompanied with a cultivation, use, or enjoyment of the same. Wilson v. Nugent, 91 S. W., 241; Buster v. Warren, 35 Texas Civ. App., 644; Niday v. Cochran, 93 S. W., 1027; Hutcheson v. Chandler, 104 S. W., 435; Satterwhite v. Rosser, 61 Texas, 171; Bracken v. Jones, 63 Texas, 186; Whitehead v. Foley, 28 Texas, 15; Elliott v. Mitchell, 47 Texas, 451.

*A. C. Bullitt, C. L. Bass* and *F. Vandervoort,* for defendants in error.—The enclosure requisite to support limitation is such an enclosure as will give notice that the party claiming limitation claims such enclosure, and it is also a question of fact as to whether or not the enclosure is such as to give notice that the party claiming limitation claims exclusive possession of that which is enclosed. Moore v. McGowen, 20 S. W., 1112; Gunter v. Mead, 78 Texas, 634; Sharrock v. Ritter, 45 S. W., 156.

The evidence was sufficient to support the verdict of the jury for both five and ten years limitation. Whitehead v. Foley, 28 Texas, 1; Iiams v. Root, 22 Texas Civ. App., 413; Evitts v. Roth, 61 Texas, 84.

It is not necessary to support limitation, that no one but the one pleading limitation should have possession of all the lands within an enclosure. Brown v. O'Brien, 11 Texas Civ. App., 459.

Continuity of possession, that is, when considered in reference to the change of possession from one party to another, means that there is not such a break in the possession that the attendant circumstances are such that a reasonable and prudent man would be induced to

suppose the possession had been abandoned. The possession, and continuous possession, as applied to one party, means that the attendant circumstances must be such that a reasonable and prudent man would not be induced to suppose the possession had been abandoned. Whitehead v. Foley, 28 Texas, 1.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This is an action of trespass to try title brought by J. S. Taylor and his wife, Ella G. Taylor, against Dunn, in which Tackaberry intervened, claiming to have purchased the title of Dunn, and in which he and Dunn, for the purpose of recovering the land, reconvened against the plaintiffs, and also brought in other parties asserting claims to portions of it. All of the other parties claimed under Mrs. Taylor, and the controversy resolved itself into one between Tackaberry, who had title to the land unless it has been lost by limitation, and the other parties, except Dunn, claiming under the five and ten years statutes of limitation. It will therefore be convenient to refer to Tackaberry as plaintiff and to those asserting limitations as defendants. The pleas of limitation were sustained by verdict and judgment in the District Court, and from an affirmance by the Court of Civil Appeals this writ of error is prosecuted by Tackaberry and Dunn.

It will be proper to take up first the assignments which assert that there is no evidence to sustain the verdict and judgment. The land in controversy is 640 acres patented to John Cummings, its western boundary being the Nueces River. It appears that many years ago it, with other lands, was enclosed by one Robert Hall in a pasture used for grazing horses, on three sides by a fence, and on the fourth side by the river, with the banks of which the fence connected at both ends. This enclosure is called the Bob Hall pasture. Hall made no claim to the land and finally sold his improvements to G. W. Cavender. On the 12th day of July, 1882, one F. M. McCaleb executed to Cavender a deed for the Cummings tracts which was recorded July 18, 1882. The defendants connect themselves with this conveyance by deeds as follows:

1. F. M. McCaleb to G. W. Cavender, July 12, 1882, recorded July 18, 1882.

2. G. W. Cavender to W. J. Thornton, July 31, 1886, recorded February 24, 1887.

3. W. J. Thornton and wife to San Antonio National Bank, January 28, 1891, recorded January 31, 1891.

4. San Antonio National Bank to M. T. Taylor, February 9, 1898, recorded February 21, 1898.

5. M. T. Taylor to J. C. Taylor, September 19, 1899, recorded October 26, 1900.

6. J. C. Taylor to Ella G. Taylor, September 20, 1900, recorded October 26, 1900.

7. M. T. Taylor to Ella G. Taylor, January 1, 1901, recorded June 9, 1903.

8. Taylor and wife to Nueces Valley Irrigation Company, July 1, 1903, recorded July 13, 1903.

9. Taylor and wife to J. L. Carr and Emma Carr, March 9, 1902, recorded March 17, 1902.

10. Emma Carr, surviving wife of J. L. Carr, to H. W. Earnest, August 13, 1903, recorded same day.

11. Taylor and wife to M. A. Haas, August 16, 1904, recorded November 2, 1904.

12. Irrigation Company to C. L. Bass, July 15, 1904, recorded July 16, 1904.

The evidence of the different possessions, as well as it can be gathered from the very indefinite and confusing testimony of the witnesses, may be condensed as follows:

In the Fall of 1882 Cavender occupied a house in a pasture adjoining that in which the Cummings tract was enclosed as stated, and not long thereafter began the use of the latter as a pasture for his stock, which use he continued until he conveyed to Thornton at the date of the deed above given. Before that date Thornton lived in and had in use another pasture further up the river than the Bob Hall pasture, but adjoining it, and at some time not shown he thereafter used the latter, also, for grazing purposes and had it so in use when he conveyed to the San Antonio National Bank. Whether or not he commenced so to use it so soon after Cavender's occupancy ceased as that the possession of the two may be regarded as continuous and unbroken the evidence fails to show, unless an inference may be indulged, from the situations of the different pastures and the character of Thornton's pursuits that he put the Bob Hall pasture in use within a reasonable time after acquiring it. When he executed the conveyance to the San Antonio National Bank Thornton ceased to hold possession of any character. The evidence as to possession held between the dates of the conveyances from Thornton to the bank and from the latter to M. T. Taylor comes from the witness, Vandervoort, who, in 1893, was employed by the bank as its agent. Upon his testimony the defendants rely to show possession by the bank during the interval mentioned. Important parts of it are claimed by the plaintiffs to have been hearsay, but for the present purpose we shall assume that no proper objection was made upon that ground and that the statement of Presnall to which he testified is to be considered as evidence upon the question as to the continuity of the possession. Vandervoort's testimony relates to the possession of the bank through tenants who occupied in the following order: Presnall & Blocker, Cavender, English, Howen and Eardley. As to the occupancy of Presnall and Blocker his earliest knowledge was acquired in 1892, when Presnall told him in Carrizo Springs that they had rented the land from the bank and were in possession. He does not account for the interval between that time and the date of the deed from Thornton to the bank. He says he thinks the bank bought Thornton's cattle with the pasture and sold them to Presnall and Blocker, from which the inference might possibly arise that the bank in the meantime kept them in the pasture; but, when interrogorated further, he states that he does not know these facts. The only conveyance from Thornton to the bank stated in the record says nothing about the pasture or the cattle, but is for the Cummings land only.

His memory is uncertain as to the duration of Presnall and Blocker's occupancy. His best recollection is that it was for two years, lasting from 1892 to 1894, but he says it may have been for three years. After Presnall and Blocker left, the Cummings and another tract were rented by the witness to Cavender. This was in 1895, the time of the year not stated. Shortly after this renting to Cavender he rented the remainder of the pasture to English. He says there were intervals between the going out of Thornton and the coming in of Presnall and Blocker and between the tenancy of the latter and those of Cavender and English, the length of which he can not state, admitting that they may have been as great as four, five or six months, or even a year. The witness, it is true, states that he had care takers in the pasture during some of the intervals, which ones he does not know; but further examination elicited the statement that his only knowledge was that persons applied to him for permission to occupy the premises and promised to do so and to take care of them. Whether or not they were ever in possession he did not pretend to know. It is too plain that the fact of possession can not be shown in this way. On account of the differences in the dates at which the defendants became parties to this litigation, limitation is to be counted in favor of some until November 4, 1903, and of others until May 20, 1905.

It seems plain that no continuous and unbroken possession for ten years was shown affirmatively. The possession of Cavender and Thornton, even if unbroken, did not last for ten years before the latter conveyed to the bank, and thereafter no continuous possession of ten years was shown. The burden was on the defendants to prove every fact essential to their defense. Relying on the occupancy of successive possessors, they were bound to show that such occupancy was continuous and unbroken. (Overand v. Menczer, 83 Texas, 122; Phillipson v. Flynn, 83 Texas, 584.) Admitting that breaks occurred, they are not in a position to ask the courts to assume that such breaks were of so short duration as not to defeat the continuity of the possession. It was incumbent on them to show the facts from which the conclusion of continuity may be deduced affirmatively. But we think the evidence affirmatively indicates, at least, that there were intervals between the possessions of Thornton and of Presnall and Blocker and between those of the latter and of Cavender which were too great to be disregarded as the reasonable times allowed by the law for changes of occupants. No decision of this court has ever held to be immaterial such lapses of possession as this evidence indicates.

It was improper for the court to submit, as it did, to the jury the question as to reasonableness of the time. There was no evidence from which the jury could properly determine that only reasonable intervals occurred, when they could not possibly know how long those intervals were. Whether it is proper in any case, where the length of the intervals is shown, to submit such an inquiry to a jury is not the question. It certainly is improper to submit a question which can not be decided upon evidence adduced. We can not admit the right of the courts to require only nine or nine and a half years of continuous possession when the law requires ten, and this

would be the effect of overlooking gaps of six months or a year between tenancies. Of course we are not speaking of cases in which, during such intervals, other acts of dominion over the land are done upon it by the claimant. Here there was nothing of the kind so far as the evidence shows. The land, it is true, was enclosed, but enclosure without use is not sufficient.

The statute requires the cultivation, use or enjoyment of the land, and this is essential to the "actual and visible appropriation" which constitutes adverse possession. The necessity for this continuous use of the land is not affected by difficulty in getting tenants. He who would acquire the land of another by limitation must perform the conditions under which the law permits him to do so. Excuses for nonoccupancy can not be accepted as the equivalent of possession. It is doubtless true that the uses to which land is put may be considered in determining whether or not intervals between the occupancy of tenants were only such as may be considered as the time reasonably required for the change. When yearly crops are raised, it may be that actual occupancy of a tenant for the time between the harvesting of one crop and the preparation for another should not be held to be essential. In such cases the appearances on the land itself would probably show the purposes for which it is being used. But the possession here in question, when held, was not itself of the clearest character. We think it would have been sufficient had it been shown to have been continuous, but it was nevertheless of a nature to be easily abandoned, and at times when the land was not grazed there were not, so far as the evidence shows, any indications of a continued dominion over it. We must therefore hold that ten years limitation was not shown.

We think it equally clear that the facts do not sustain the claim under the five years statute. No continuous payment of taxes was shown for a period of five years prior to 1893. There was no continuous possession of five years, as we have shown, from that time until Eardley took possession, which was in December, 1897. The five years must be counted from that time for the reason already shown, that Eardley's possession is not shown to have succeeded those which preceded it within proper time.

The statement given of the deeds under which defendants claim shows that at no time after Cavender last entered did anyone hold under a deed duly registered for as much as five years. The conveyance from M. T. Taylor to J. C. Taylor vested the title in the latter September 19, 1899, less than five years after Cavender's last entry, and thereafter the holding must have been under it. There was therefore no possession under a recorded deed from that date until October 26, 1900, when that deed was recorded, more than a year after it was executed, so far as the record shows. Because of this interval in the registration of deeds the possession after October 26, 1900, can not, for the purpose of five years limitation, be connected with prior possessions, and five years did not elapse between that date and the interruption of limitation by suit.

It is urged by plaintiffs in error that we should render judgment in their favor for the reason that the facts have been fully devel-

oped, but we can not say that this is true. The record indicates
that other evidence on the questions we have discussed may be ob-
tained and we think the cause should be remanded for another trial,
which makes it proper that we determine some other questions.

As we have already stated, we agree with the Court of Civil Ap-
peals that the enclosure by the fence and the river was sufficient,
when the land was in actual use, to show such an appropriation of
it as would sustain the defense of limitation if such use was con-
tinuous. This, however, is subject to the operation of article 3346,
Revised Statutes, on the claim of ten years limitation, which is dis-
cussed further on.

The relation of landlord and tenant between the bank and Presnall
and Blocker may be shown by an acknowledgment of tenancy, but the
fact of actual possession by the tenants for the purposes of limita-
tion can not be thus established. Their declarations as to that fact
would be hearsay.

Evidence that the Nueces River was generally used above and be-
low the Bob Hall pasture as a barrier for pastures was admissible, for
the reason that such general use of it would indicate to the owners
of land that it was thus appropriated and used by others. The mere
fact that the river was not a perfect barrier against stock would not
be conclusive against the claim of the possessor. (Gunter v. Meade,
78 Texas, 638.)

The trial court did not err in permitting the defendants to show
that the deed of M. T. Taylor to E. G. Taylor, dated January 1,
1901, was in fact not executed until about the date of its acknowl-
edgement and record, June 9, 1903. Had there been no previous
conveyance by M. T. Taylor, this evidence would have shown that
there had been continuous possession for her under her recorded deed
from the bank until she executed the conveyance to Ella G. Taylor.
As the case now appears from the record the evidence is unimportant,
but it may become important on another trial.

The evidence upon another trial may differ materially from that
in the record. From what we have said it follows that the court
should direct a verdict for the plaintiffs for the land unless there is
fuller evidence on the question of limitation than that in the record.
A discussion of the instructions given at the trial under review would
serve no useful purpose, as we can not know what other evidence may
be adduced.

There is, however, a question raised upon the following *instruction*
which should be decided: "Prior to July 13, 1891, it was not im-
portant under the ten years statute how many acres of land were
contained in the enclosure embracing any land sought to be held
by limitation, but on that date a law took effect restricting any
enclosure sufficient to satisfy the ten years statute to less than 5000
acres. It was also provided by said law that possession of land
belonging to another by a person owning or claiming 5000 acres of
land or more enclosed by a fence in connection therewith or adjoining
thereto shall not be the peaceable and adverse possession required
by the ten years statute of limitation, unless said land so belonging
to another shall be segregated and separated by a substantial fence

from said lands connected therewith or thereto adjoining, or unless there be actual possession thereof. However, where a party so in possession holds the land under a deed or deeds fixing the boundaries of the possessor's claim and is duly recorded, such peaceable possession shall be construed to be coextensive with the boundaries specified in such instrument, and the restriction of the enclosure to less than 5000 acres does not apply under said ten years statute of limitation."

The proposition in the instruction which is controverted is, "that if the parties claiming such limitation had a deed on record it was immaterial whether or not the enclosure in which the land in controversy was located exceeded 5000 acres of land." The question arises upon the construction of the Act of 1891 (now article 3346, Revised Statutes) in connection with articles 3340, 3342, 3343, 3344, 3345, 3348 and 3349. Article 3346 is as follows: "Possession of land belonging to another by a person owning or claiming five thousand acres or more of lands inclosed by a fence in connection therewith or adjoining thereto shall not be the peaceable and adverse possession contemplated by article 3343, unless said land so belonging to another shall be segregated and separated by a substantial fence from said lands connected therewith or . thereto adjoining, or unless at least one-tenth thereof shall be cultivated and used for agricultural purposes, or used for manufacturing purposes, or unless there be actual possession thereof."

The phrase, "peaceable and adverse possession," is common to articles 3340, .3342 and 3343, which prescribe the different periods of limitation. None of these provisions prescribe what shall constitute the possession referred to. That is done by articles 3348 and 3349. The definitions there given of "peaceable" and of "adverse possession" originally applied to those terms as used in all the articles fixing the different periods of limitation, the same tests determining the sufficiency of the possession under all the provisions. This was true until the Act of 1891 (art. 3346) was adopted. It is still largely true, but the act referred to prescribes a special rule to be observed in applying the ten years period in the cases of which it treats. That rule is not made applicable to cases depending on the three and five years periods, as appears from the fact that it is expressly confined to possessions referred to in article 3343, which is the ten years statute. Had it been intended to apply indiscriminately to possessions asserted under all three of the articles the reference naturally would have been, either to all of them, or to articles 3348 and 3349, in which the possession contemplated in all had been defined. Hence it follows, as held by the Court of Civil Appeals in Cunningham v. Matthews, 57 S. W., 1115, in which a writ of error was refused by this court, that article 3346, by its terms, does not apply where the five years statute is in question. But it- is equally true that by its terms it does apply when ten years limitation is claimed by such an enclosure as is mentioned. There is nothing in it which makes an exception of cases in which the land enclosed is held under deed or other muniment of title defining boundaries. It declares, in effect, that possession by enclosure of the specified size shall not be deemed the possession essential to ten years limitation unless the other pre-

scribed things exist. The courts have not the right to make sufficient an enclosure without any of those other things, but with something else not mentioned in the statute. Article 3344, which prescribes rules for determining the extent of the required possession when it exists, does not attempt to fix the essentials of the possession itself. It operates when the fact of possession required by other provisions is established, and enables the courts to ascertain the lawful extent of the possession, but it does not, as other provisions do, establish any rule by which to determine the sufficiency of the possession. Hence, there is no conflict to be reconciled between it and article 3346. The effect of this legislation seems to be to leave unaffected the rule established by the decisions in this State as to the sufficiency of possessions held by means of such enclosures and use of land, so far as that rule applies to claims under the five years statute, and to abrogate the rule in its application to the ten years statute, although the claim be asserted under recorded deeds. The same possession and claim held sufficient for five years is made ineffectual for ten years. Speculation as to the reasons for this would be useless. We must take the statute as it is written and hold that it does not admit such a construction as the instruction in question put upon it.

We discover nothing else needing further discussion than is found in the opinion of the Court of Civil Appeals.

*Reversed and remanded.*