PENCE et al. v. COBB.

(Court of Civil Appeals of Texas. El Paso. Feb. 27, 1913. On Rehearing, April 3, 1913.)

1. TRESPASS TO TRY TITLE (§ 6*)—TITLE—PROOF.

Plaintiff in trespass to try title must show title in himself.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–9, 15, 16; Dec. Dig. § 6.*]

2. PUBLIC LANDS (§ 223*) — SPANISH AND MEXICAN GRANTS—NATURE.

The interest of a pueblo under a Spanish or Mexican land grant was little more than a restricted and qualified right to alienate portions of the land to its inhabitants for building or cultivation, and to use the remainder for commons, pasture, or other public purposes, and the inhabitants could not convey in severalty unless under conveyance from the pueblo with authority in the pueblo to so convey.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 705–719, 721–725; Dec. Dig. § 223.*]

3. PUBLIC LANDS (§ 210*)—CONVEYANCE—EVIDENCE—SUFFICIENCY.

In trespass to try title, evidence *held* insufficient to show a conveyance of the land from a pueblo while the land was under the jurisdiction of Spain or Mexico.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 659–665, 704; Dec. Dig. § 210.*]

4. PUBLIC LANDS (§ 211*) — GRANTS — CONFIRMATION.

The provision of Act Feb. 11, 1858, that the confirmation of previous land grants should not interfere with rights accruing before the act was passed, does not protect a claim as to which there is no evidence of title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 666–671; Dec. Dig. § 211.*]

5. MUNICIPAL CORPORATIONS (§ 51*)—NON-USER OF FUNCTIONS—EFFECT.

A municipal corporation cannot dissolve itself by mere nonuse of its corporate functions, as by failing to elect officers; dissolution being accomplished by legislative enactment, or other mode provided by law.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. § 51.*]

6. MUNICIPAL CORPORATIONS (§ 48*)—CORPORATIONS—INCORPORATION—VALIDITY.

A prior act incorporating a town having remained unrepealed and the incorporation undissolved, subsequent proceedings attempting to reincorporate were void, invalidating rights under a deed from or judgment against the authorities of the invalid corporation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 127, 128, 130–133; Dec. Dig. § 48.*]

7. MUNICIPAL CORPORATIONS (§ 15*)—INCORPORATION—VALIDITY.

Act April 12, 1895 (10 Gammel's Laws of Texas, 820), validating incorporation of municipalities notwithstanding noncompliance with provisions of Rev. St. 1895, arts. 579–617, did not validate an incorporation that was invalid because of the existence of a prior corporation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 40; Dec. Dig. § 15.*]

8. MUNICIPAL CORPORATIONS (§ 49*)—DISSOLUTION.

An order entered in 1883 by a county commissioner's court abolishing a municipal corporation attempted to be organized in 1882 did not affect a valid incorporation under an unrepealed act of the Legislature passed in 1871.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 134–137; Dec. Dig. § 49.*]

On Rehearing.

9. APPEAL AND ERROR (§ 1177*)—REVERSAL—DISPOSITION OF CAUSE.

On reversal of a judgment in trespass to try title the cause will be remanded for new trial, where it appears that the facts regarding the title have not been fully developed, on account of an erroneous holding of the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. § 1177.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Zach Lamar Cobb against Amy Pence and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Loomis & Knollenberg and Patterson, Buckler & Woodson, all of El Paso, for appellants. Z. L. Cobb, M. Nagle, and S. Thurmond, all of El Paso, for appellee.

HIGGINS, J. Action in trespass to try title by Cobb against appellant for 48.94 acres of land situated in El Paso county in the Socorro grant, resulting in judgment in his favor.

On February 11, 1858, the Legislature enacted this law:

"Section 1. Be it enacted by the Legisla-

ture of the state of Texas, that the state of Texas hereby relinquishes all right and interest in the following described lands, to the original grantees thereof, their heirs, and legal assigns, to wit: In the county of El Paso—(1) To the people of the town of Socorro, one league of land, called 'El Pueblo de Socorro.' (2) Jose Sanchez, Guadalupe Miranda and Romelo Barela, one league and one half league of land, called 'El Canutillo.' (3) To Juan Maria Ponce de Leon, two caballerias of land, called 'El Rancho de Ponce,' now known as the town of Franklin. (4) To Juan and Jacinto Ascarete, three leagues of land, called 'El Rancho de Ascarete.'

"Sec. 2. That it shall be the duty of the several claimants to the lands named in this act, to have the same surveyed by the district or county surveyor of said county, which survey shall in all respects conform to the metes and bounds designated in the original grant, and upon the return of the field notes thereof to the General Land Office, the Commissioner of the General Land Office, is hereby authorized and required to have the same plotted on the proper map in his office, and issue patents for the same in accordance with existing laws.

"Sec. 3. That the confirmation herein extended to the lands named in this act, shall in no way be construed to interfere with any rights which may have accrued to other parties before the passage of this act. Provided, that nothing in this act shall be so construed as to relinquish the right of the state to any of the islands or salt lakes situated in the county named in this act." Acts of 1858, 4 Gammel's Laws of Texas, p. 1027.

On September 23, 1878, patent was issued "to the inhabitants of the town of Socorro" for 2 leagues, 14 labores, and 500 square varas of land on the waters of the Rio Grande, described as follows: "Beginning at a stake and mound on the bank of the Rio Grande set for lower corner of survey 42 for the town of Solita; thence N. 21¾ deg. E. 2,670 varas along the southeast boundary of survey 42 to a stake and mound; thence N. 48½ deg. E. 1,450 varas to a stake and mound on the bank of an acequia; thence N. 37 deg. E. 3,020 varas to a stake and mound on a sand hill called La Loma de Cruz de San Antonio; thence N. 70¾ deg. E. 9,400 varas to a stake and mound in the northeast corner of survey 42; thence S. 30 deg. E. 10,810 varas along said sand hills to a stake and mound 140 varas from the edge of the valley; thence S. 73½ deg. W. 7,740 varas along the north boundary of the San Elizario grant to a stake and mound on the bank of the Rio Grande, it being the upper corner of the San Elizario grant and lower corner of this survey; thence up the river with its meanders as follows (giving courses and distances) to the place of beginning." The patent recites that it was issued by virtue of said act above mentioned, and in

confirmation of the Spanish grant of said land.

By an act of the Legislature dated April 26, 1871 (6 Gammel's Laws, p. 1314), the citizens of the town of Socorro in El Paso county were declared a body corporate under the style of the "Town of Socorro"; the limits of the incorporated town being coincident with the land granted by the above described patent. Control over its corporate affairs was vested in a mayor and nine aldermen, under the style of "Town Council of the Town of Socorro." It was provided that the justice of the peace of the precinct in which the town was situate should be ex officio mayor thereof. Under the view which we take of the case, it is unnecessary to notice the other provisions of the act.

The inhabitants of the town ignored the special charter of 1871, and in 1882 attempted to organize under the general municipal incorporation laws, and on January 19, 1882, an order was entered in the minutes of the commissioners' court of El Paso county, declaring the result of an election held to determine whether the town should incorporate, and declaring the inhabitants thereof incorporated under the name of the town of Socorro. The territory embraced within its limits was described as bounded on the north by Ysleta, on the east by the foothills, on the south by San Elizario, and on the west by the Rio Grande. This attempted organization was abolished by an election held October 15, 1883, in pursuance of which an order abolishing same was entered in the minutes of the commissioners' court on November 12, 1883. On January 22, 1886, an election was held to determine whether or not the town should incorporate under the provisions of chapter 11, title 17, and on January 26, 1886, an order was entered in the minutes of said court declaring that the inhabitants of the town of Socorro "included in the boundaries of the Socorro grant of one league, be, and they are hereby incorporated as a town, and to be known, named and called Socorro." Chapter 11, title 17, of 1879 Revised Statutes, relates to towns and villages of 200 to 1,000 inhabitants. In Revised Statutes of 1895 it appears as chapter 11, title 18; in Revised Statutes of 1911 as chapter 14, title 22. In 1891 (10 Gammel's Laws, p. 234) a special law was passed validating deeds theretofore executed by the corporation thus attempted to be created in 1886; but, under the view which we have of the case, it is unnecessary to notice same.

The town continued to act under the 1886 incorporation, and by deed dated June 10, 1910, undertook to convey to appellee, for a consideration of $100, various lands, including that in controversy herein. This deed was executed after Cobb had acquired the so-called Thibault title hereinafter mentioned.

On December 15, 1910, in an action of trespass to try title, Cobb against the corpora-

tion of the town of Socorro, a judgment was rendered in the district court of El Paso county in favor of Cobb for the title to and possession of the land in controversy herein.

In addition to this deed of June 10, 1910, and the judgment of December 15, 1910, Cobb relied upon title acquired from the heirs and assignees of one J. J. Thibault. As evidencing title in Thibault, he offered in evidence instruments recorded in the deed records of El Paso county, as follows: The field notes of a survey made for J. J. Thibault within the town of Socorro, said survey being No. 5, giving courses and distances, dated February 24, 1855, containing 146 acres and $57/_{60}$ varas, made for J. J. Thibault, containing the land in controversy, lying within the Socorro grant, signed and certified to by the surveyor of the El Paso district. Attached to the field notes of this survey was a notation, as follows: "Note by J. J. Thibault. The annexed survey (referring to the above survey) comprises the lands bought of different persons according to the accompanying deeds, numbered from 2 to 15 inclusive." The deeds referred to in said note by J. J. Thibault, 14 in number, were also offered in evidence; No. 2 reading as follows: "I, Juan Jurado, citizen of this town of Socorro, say the present witnesseth that I have sold to J. J. Thibault, a piece of land on the other bank of the river bed, in the place called 'El Bado de la Acequia Dura,' and for said land he gave me the sum of forty-five dollars ($45), which amount I have duly received; and as of this land I have no documents whatever, I give him this paper only as proof of sale, citing the adjoining owners, who are: On the north side Fabian Chaves and Jesus M. Padilla; on the south the old river; on the west Marcos Jurado and J. J. Thibault and on the west Pedro Jorge Lujan. In witness whereof, I sign the same with two witnesses in the court of Socorro on the 22d day of August, 1854."

The remaining deeds are not copied in full in the statement of facts, but it is stated that they are all similar to the instrument above quoted and bear dates during the months of August, October, November, and December, 1854. The number of acres undertaken to be conveyed by the various deeds is not given, and the lands conveyed were described by giving the names of the adjoining owners. Deed No. 15 was undated and unsigned, but purports to be given by Francisco Garcia. J. J. Thibault is the grantee named in all of the deeds. They are all in the Spanish language, and are unacknowledged. The field notes of the survey made for Thibault, the memorandum made by him, and said deeds were all recorded together in the deed records of El Paso county on August 24, 1857. Conveyances were also offered in evidence passing to Cobb whatever title J. J. Thibault may have had. A deed dated March 3, 1888, from the mayor of the town of Socorro, conveying 6.63 acres of land, was also offered in evidence. The grantee of this deed is not disclosed by the record. It is stated that the land conveyed thereby lies west of and adjacent to the land in controversy, and accompanying the deed is a plat of the land conveyed. The words "Thibault tract" were written upon the plat and across land lying adjacent to said 6.63 acres, and along the western boundary line of the tract were written the words "Gregorio Olguin." In introducing this deed appellee stated that it was offered for the purpose of showing that J. J. Thibault and his abovementioned grantors were recognized by the corporation of Socorro as having title to the premises in controversy.

Upon trial before a jury the court instructed that the legal effect of the deeds and other muniments of title offered in evidence by the plaintiff disclosed that he had title to the land, unless his right was barred by the ten-year statute of limitation, and the only issue submitted to the jury was the question of limitation.

[1] Cobb being the plaintiff, it was incumbent upon him to show title in himself, and if the evidence fails to establish such title, the judgment must be reversed.

[2] From the preceding statement it will be noted that the Thibault title originated prior to the act of February 11, 1858, whereby the Legislature relinquished the right of the state of Texas to the grant called "El Pueblo de Socorro." Therefore whatever right Thibault and his grantors had in the land was under the original Spanish or Mexican grant. It is unnecessary for us to enter into a consideration of the exact nature of the title held by pueblos under grants of this nature; but it is well settled that the pueblos themselves had no indefeasible proprietary interests therein, but that they were held in trust, subject to the control and disposition of the Spanish or Mexican government. The interest of the pueblo amounted to little more than a restricted and qualified right to alienate portions of the land to its inhabitants for building or cultivation, and to use the remainder for commons, for pasture lands, or other public purposes. Monterey v. Jacks, 139 Cal. 542, 73 Pac. 440; Grisar v. McDowell, 73 U. S. (6 Wall.) 363, 18 L. Ed. 866; Townsend v. Greeley, 72 U. S. (5 Wall.) 326, 18 L. Ed. 549. Whatever interest the inhabitants themselves may have had in the land, it was certainly not such an interest as would authorize them to convey portions thereof in severalty, unless the same had been previously conveyed to them in severalty by the officers of the pueblo under the authority vested in them to convey to its inhabitants. See authorities, supra.

In the instant case, appellee offers in evidence no conveyances to the grantors of Thibault from the pueblo of Socorro while under the jurisdiction of Mexico or Spain, nor any evidence from which it might be presumed that such conveyances had been in

fact given but for some reason could not be produced; and from the date that Mexico lost jurisdiction over the pueblo of Socorro until long subsequent to the date of the conveyances to Thibault there was no municipal authority in existence which could possibly have been authorized to convey the lands. Therefore it does not appear that Thibault's grantors had any right or title which they could convey in severalty to him. No conveyances to Thibault's grantors being shown while the pueblo was under the jurisdiction of Spain and Mexico, and no evidence from which such grants or conveyances could be presumed, and from 1836 up until the time of the conveyance to Thibault there being no municipal authority in existence vested with the power to convey the lands to Thibault's grantors, it follows that Thibault had no title, and the judgment herein rendered in favor of appellee cannot be sustained upon this phase of the case.

[3] It is unnecessary for us here to enter into a review of the authorities to determine what facts must be shown to raise the presumption of a grant or conveyance; but it is sufficient to say that the evidence necessary to raise such an issue is wholly lacking, and there is nothing by which a valid grant or conveyance to Thibault's grantors could be presumed or inferred. See Masterson v. Harrington, 145 S. W. 626, and authorities there cited and reviewed.

[4] There is nothing to aid appellee in this matter by the provisions in the act of February 11, 1858, "that the confirmation herein extended to the lands named in this act shall in no wise be construed to interfere with any rights which may have accrued to other parties before the passage of this act." This saving clause would certainly have protected Thibault in any rights which he might have had to the land in severalty, but the point is that no such right is shown to have accrued to him which would have been protected thereby. Aside from these considerations, which we deem conclusive, the recitations in the various deeds to Thibault, "and as of this land I have no documents whatever, I give him this paper only as proof of sale, citing the adjoining owners," rebuts any presumption of a conveyance or grant having theretofore been made to such grantors.

[5, 6] Passing now to a consideration of the title claimed by Cobb under his deed dated June 10, 1910, and the judgment in his favor rendered December 15, 1910, in trespass to try title against the town of Socorro, it is not necessary for us to pass upon the interesting questions raised in appellant's brief relating to the nature of the title vested by the legislative grant of February 11, 1858, and the patent issued in pursuance thereof, nor to consider any of the questions relating to the correct and proper manner by which the donees of that grant could be divested of such title. It is quite obvious that these questions all become unimportant if the corporation of the town of Socorro, under which Cobb claims, has no legal status. If the attempted incorporation thereof in 1886 was without authority of law, it was void, and necessarily under no circumstances would title pass by the deed and judgment. The state creates municipal corporations for public ends and purposes, and such a corporation cannot dissolve itself by nonuse of its corporate functions; mere failure or neglect to elect officers suspends the functions but does not dissolve the corporation, but it must and will continue in existence until dissolved by legislative enactment, or in some other mode provided by law. State v. Dunson, 71 Tex. 65, 9 S. W. 103; Buford v. State, 72 Tex. 182, 10 S. W. 401; Largen v. State, 76 Tex. 325, 13 S. W. 161; Lum v. City of Bowie (Sup.) 18 S. W. 143; 1 Dillon on Municipal Corporations (5th Ed.) §§ 331, 332. The act of April 26, 1871, incorporating the town of Socorro, has never been repealed, and it remains to be ascertained whether or not its corporate existence was otherwise abolished in any manner prescribed by law prior to the attempted incorporation in 1886. The record here does not disclose any attempt whatever to abolish the corporation created by the act of 1871, and, under the authorities last above cited, the attempted incorporation in 1886 was void, and the authorities from whom Cobb obtained his deed and against whom the judgment was rendered do not represent any valid corporate body. It follows therefore that his deed and judgment could pass no title.

[7] Appellee contends, however, that any defect in the attempted organization in 1886 was validated by the act of April 12, 1895 (10 Gammel's Laws of Texas, 820,) which reads as follows: "Section 1. Be it enacted by the Legislature of the state of Texas: That all towns and villages which have heretofore attempted to be incorporated under the provisions of chapter 11, title 17, of the Revised Civil Statutes, but which in said attempted incorporation failed to comply with all the requirements of said chapter 11, title 17, but which said towns or villages have from the date of their several attempted incorporations, as aforesaid, exercised the functions of towns and villages, and been recognized as such towns or villages, be and are hereby declared to be towns and villages of the class named, and their incorporations be and the same are hereby declared to be as legal and valid as if the original acts of incorporation had been in strict compliance with the requirements of the law: Provided, that nothing in this act shall be held to validate the incorporation of towns and villages that had less than two hundred inhabitants at the time of this attempted incorporation of such towns and villages." It is manifest, however, that this validating act has no application to the facts disclosed by this record. The attempted incorporation was invalid, not by reason of failure to comply

with any requirement of chapter 11, title 17, but because there was already in existence a valid and existing corporation, embracing the same territory. Therefore the validating act referred to has no application whatever.

[8] It is true that on November 12, 1883, pursuant to an election held on October 15, 1883, an order was entered abolishing the corporation, but this had reference to the attempt made in 1882 to incorporate under the general incorporation laws. Indeed, until the act of April 27, 1895 (10 Gammel's Laws, 896, title 22, chapter 16, Revised Statutes 1911), it appears there was no way to abolish a town having a special charter, such as Socorro had.

We therefore conclude: First. No grants or conveyances to Thibault's grantors appearing vesting in them title in severalty to the lands which they attempted to convey to him, and there being no evidence to support a presumption or inference that such grants or conveyances had, in fact, been made by authorities with power to make the same, appellee therefore has no title to the lands in controversy under Thibault. Second. The attempted incorporation of Socorro in 1886, under the provisions of chapter 11, title 17, Revised Statutes of 1879, being void for the reasons indicated, his deed from that body, and the judgment rendered against it in trespass to try title, under no circumstances could convey title.

The judgment of the lower court in favor of appellee for the title to and possession of the land in controversy herein is reversed and here rendered, that he take nothing by his said suit therefor against the appellants, and they are discharged without day.

#### On Rehearing.

In the original opinion we referred to the year 1836 as the date upon which the pueblo of Socorro passed from under the jurisdiction of Mexico. It is true that from December 19, 1836, Texas claimed civil and political jurisdiction over all of the territory bordering upon the upper Rio Grande, but this jurisdiction was never acknowledged by Mexico until the treaty of Guadalupe Hidalgo in 1848, and the state of Chihuahua exercised jurisdiction over the territory in which the pueblo was situate until the same was ceded by the treaty mentioned. Clark v. Hills, 67 Tex. 141, 2 S. W. 356.

[9] Appellee urges that upon the trial of this cause the court held he had title to the premises in controversy by virtue of his deed from and judgment against the town of Socorro, and he therefore did not fully develop all of the facts relating to the J. J. Thibault title; that he should be permitted to retry the cause so that the facts in regard to this title may be fully developed. From the condition of the record we are unable to determine whether or not the facts in regard

thereto were fully developed, and it may be that upon a retrial appellee may be able to show a title thereunder or facts sufficient to raise an issue of fact in regard thereto. Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265.

The former order reversing and rendering this cause is therefore set aside, and the cause is here now reversed and remanded for a new trial.