**HARDY et al. v. BUMPSTEAD.** (No. 1825.)

Court of Civil Appeals of Texas. Beaumont. May 17, 1929.

Rehearing Denied June 12, 1929.

Smith, Crawford & Combs, of Beaumont, for appellants.

Coe & Briggs, of Kountze, and A. M. Huffman, of Beaumont, for appellee.

WALKER, J. This was a suit in trespass to try title by appellee against appellants, involving 106⅔ acres of land, a part of the B. B. B. & C. B. Railway Company, section No. 70, abstract No. 109, in Hardin county, Tex. Appellants owned the record title. Appellee claimed under the statute of 10 years' limi-

itation, and was awarded the land upon the affirmative answer of the jury to the following issue:

"Did C. J. Bumpstead have peaceable and adverse possession of the land and premises described in plaintiff's petition, cultivating, using or enjoying the same for a period of ten years prior to the date upon which W. P. Wallace and C. A. Garrison or their agents went upon said land and began cutting and removing the timber therefrom?"

Appellant says the court erred in not instructing a verdict in their behalf and in submitting issue No. 1 and in not setting aside the verdict as being against the great weight and preponderance of the evidence. These assignments are overruled. The limitation period began in February, 1917, and continued until March, 1927. The possession was open, visible, notorious, and hostile, and under a claim of right. Appellee entered upon the land, built a house and the necessary outhouses, cleared and fenced a garden and a small patch of about 5 acres of land. He lived upon the premises during all the limitation period except about 6 months during the latter part of 1923, and all of 1925. He cultivated the cleared land every year except during 1925. During the entire limitation period he kept up the fences, kept the well repaired so that water could be taken from it, at all times he had his household goods stored in the house when he was not staying there in person, and during all the time kept his farming implements on the premises and properly stored when not in use. During 1925, one of his sons lived in the house and looked after the premises during January and February and November and December. These months were the trapping season, and the son, being engaged in trapping, lived in the house upon the premises during this time as a tenant of his father. During the months between February and November the son was engaged with his father, appellee, in making ties, and the two of them camped about 2½ miles from the premises in controversy. During this time the son returned to the premises once per week, sometimes twice per week, sometimes appellee returned with him, and on each weekly visit would spend a day and night on the premises. The claim of appellee to the land was notorious among his friends and associates.

It is appellants' proposition that the facts as summarized show breaks in appellee's possession during 1923 and 1925 sufficient in law to destroy the limitation claim. We do not understand that appellants make any other attack on the sufficiency of the evidence to raise the issue of 10 years' limitation.

Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265, is authority for the proposition that yearly cultivation without a break, accompanied by such other circumstances as reflected here, constitutes actual possession. Admittedly,

the cultivation was continuous from 1917 to and inclusive of 1924. This authority disposes of appellants' propositions attacking the occupancy for 1923.

More difficulty is encountered in determining the issue of continuous occupancy during 1925. But we think the issue was raised. In Kimbro v. Hamilton, 28 Tex. 560, possession, where actual residence on the land was not shown, was defined as being such cultivation, use, and enjoyment of the land by visible, notorious acts of ownership as would give notice to the owners and others of the adverse possession of the land. In Whitehead v. Foley, 28 Tex. 1, there was a break of about five months in the actual residence of the tenant upon the land, but during this time about 800 bushels of corn were stored upon the premises, and the other facts of the claim and possession were somewhat similar to the attending facts here. It was there held that the fact that the premises were left without an occupant for a short time when there was no intention of abandoning the premises did not stop the running of the statute. The Chief Justice, speaking for the Supreme Court, said:

"If the attendant circumstances are such, that a reasonable and prudent man would not be induced to suppose the possession had been abandoned, it can not be insisted that the running of the statute has been interrupted. The length of time during which there was no one on the land may have been unusually long in this case, but the very large amount of corn left in the crib until the subsequent occupant took possession of the premises, to say nothing of other circumstances, was sufficient to show that possession was asserted and continued by those who had previously maintained and claimed it."

We think the circumstances of this case were sufficient to raise the issue suggested in the case cited; that is, that a reasonable and prudent man would not have been induced to suppose the possession had been abandoned.

As an instruction to aid the jury in answering issue No. 1, appellants requested the submission of the following special charge, which the court refused:

"You are further instructed that the possession referred to you in question No. 1, submitted to you herewith, must have been such a possession and occupancy by visible appropriation and acts of ownership as were reasonably calculated to give notice to the owner of the land of an adverse claim."

This charge embodies a correct legal proposition, recognized and applied by us in our discussion, supra, of the sufficiency of the evidence to raise the issue of 10 years' limitation. In support of the jury's verdict, it was necessary for appellee to show only that his possession and occupancy was evidenced by such acts of ownership and visible appropriation "as were reasonably calculated to give

notice to the owners of the land of an adverse claim." It was appellee's right to have a charge of this character submitted to the jury on the facts of this case. But, as aiding the jury to comprehend the law governing the rights of appellants, the refusal of this charge was not error. The charge given was in the language of the statute and was to the absolute effect that, to be adverse, the possession must be an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. In the language of the statute, the jury was further told that the possession must be "continuous." We think the charge defining "peaceable possession" and "adverse possession" in the language of the statute was all that the record owners could demand, and fully safeguarded their rights. The right to an additional charge further defining these terms in application to the facts of the particular case inheres in the limitation claimant, so that the jury may not err against him in weighing the sufficiency of the facts to sustain the issue. To tell the jury that possession is shown if the appropriation and acts of ownership are reasonably calculated to give notice of the adverse claim to the owner of the land is a construction of the statute in favor of the limitation claimant and not the record owner, and therefore its refusal, when requested by the record owner, is not reversible error. Brown v. Fisher (Tex. Civ. App.) 193 S. W. 357.

The charge was not subject to the exception that it failed to require the jury to find that the possession "must be uninterrupted and continuous" and "accompanied by a claim of right throughout said period." The charge duly imposed these burdens upon appellee. In the main charge the term "claim of right" was not defined. It was not excepted to on this ground, nor was a special charge on this issue requested. But, after the jury retired to consider its verdict, it came back and made in writing the following request of the court:

"How should claim of right as mentioned under the definition of adverse possession be established by plaintiff in this case?

"Does clearing of land and erection of buildings when land is first occupied establish claim of right?"

The court refused this request in the following language: "The court is not permitted to answer the foregoing questions for you."

■ This refusal was proper. An answer to the jury's request would have been upon the weight of the evidence. Later the jury returned with the following request: "What is definition of claim of right?"

In answer to this request, the court submitted the following charge: "In compliance with your request for further instructions defining the term 'claim of right,' I instruct you that by claim of right, as used in the court's charge to you, is meant that the claimant must have claimed the land as his own to hold it for himself."

■ This was a proper definition of "claim of right," and is in the language of Mr. Chief Justice Phillips in Houston Oil Co. v. Jones, 109 Tex. 89, 198 S. W. 290, followed by this court in Fowler v. Woods (Tex. Civ. App.) 200 S. W. 247. As answering the jury's request, appellants requested the following charge: "In response to request for additional instructions the court charges you that by the term 'claim of right' as used in the charge is meant the claim must be such as to unmistakably indicate an assertion of claim of exclusive ownership in the occupant of the land. The existence of such claim of right may be established, either by the declarations of the person in possession, made during the time of such possession, or by such open, notorious, exclusive and continuous possession and appropriation, of the land and premises by him as to clearly indicate a claim of exclusive ownership of the land, or by both such declarations and acts. The existence or nonexistence of such claim of right, is a question of fact to be determined by you from the evidence."

■■ This charge was properly refused on three grounds: (a) The charge given by the court was sufficient; (b) the requested charge was on the weight of the evidence; and (c) the request from appellants came too late. The absolute right to request additional charges ended with the submission of the original charge to the jury. Luke v. City of El Paso (Tex. Civ. App.) 60 S. W. 363; Nolan v. Young (Tex. Civ. App.) 220 S. W. 154.

■ The court did not err in refusing to charge the jury that the possession must be "accompanied by a claim of right to said land and possession continuously for said period of time," nor that the possession must be "continuous and uninterrupted by any surrender of possession for the full period of two years before the entry upon the land by W. P. Wallace or G. A. Garrison or their agents." These issues were fully submitted by the main charge.

■ The refusal of the following special charge was not error: "The court instructs you, that if you find from the evidence that at any time between the year 1917 and the time Garrison and Wallace entered upon the land the plaintiff removed from said premises or surrendered his possession thereof, even for a brief period, you should answer said Issue No. 1, 'No.'"

A charge to the effect that the possession was broken if "the plaintiff removed from said premises" during the limitation period was not the law. Residence upon the premises was not essential, and the removal of the residence from the premises did not, as a matter of law, break the possession. To charge

the jury that a surrender of the possession "even for a brief period" would be misleading and erroneous, when the charge, as did appellants' requested charge, identifies possession with residence upon the premises. These requested issues, in so far as they were proper to go to the jury, were embodied in the court's main charge.

 The court did not err in refusing a new trial on the ground of newly discovered evidence. This evidence was only cumulative of that in the record. It was also properly refused on the ground that the presentation of the newly discovered evidence came too late. The motion was filed about 1 p. m. on the last day of court, without supporting affidavits, and was heard about 5 p. m. of that date upon the oral evidence of the proffered witnesses. Appellee knew nothing of the proposed new witnesses until about the time the motion was filed, and did not know of the details of their testimony until it was offered upon the witness stand. He duly objected to the court hearing the testimony, upon the ground that it came too late. While the order overruling the motion does not show upon what ground the court acted, yet all presumptions must be indulged in favor of the court's ruling. That the court overruled the motion on the ground that it came too late may be presumed. Texas & N. O. Railway Co. v. Scarborough, 101 Tex. 436, 108 S. W. 804, directly in point on this proposition. See, also, Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85, and Smith v. Folmar (Tex. Civ. App.) 224 S. W. 526.

What we have said disposes of all propositions advanced by appellants. It follows that the judgment of the trial court must be affirmed, and it is accordingly so ordered.

## On Rehearing.

On motion of appellants we make the following additional conclusions of fact:

Appellee's original dwelling house was burned in the spring of 1922. Immediately after the fire he "cleaned out a little smokehouse on the place and lived in that" and cultivated the cleared land in 1923. The nature and extent of the crops raised on the cleared land for the year 1923 were not fully shown. In June of 1923 appellee occupied what was known in the record as "the Daniels house," located about 2½ miles from the premises in controversy, as headquarters for his work as a tie maker. He continued using the Daniels house as headquarters for his work until Christmas, 1923. While he was occupying this house, his plow tools and a portion of his household goods were stored in his house upon the premises in controversy. "The character and amount of the household goods and plow tools left on the premises were not disclosed by the evidence." While he was occupying the Daniels house, appellee, according to his testimony, "returned to the premises as often as every ten or fifteen days and according to the son's testimony, he and his father returned as often as once a week and stayed all night on the place. The fence around the patch or garden was kept up and the well kept cleaned out and in condition for use. During this time there were two small buildings on the place; the smokehouse (being used as a residence), some ten or twelve feet in size, and a chicken house, about eight by ten feet in size, made of poles * * * the record does not disclose whether these buildings were kept locked or otherwise fastened during this period of time."

In view of all the circumstances in the case, we make the additional conclusion that appellee kept the doors and windows of his house securely fastened in his absence. While there is no direct evidence to this effect, yet the circumstances warrant that conclusion. After Christmas in 1923 appellee rebuilt the dwelling house on the premises in controversy, and continuously occupied the same until 1925. During 1925 he again occupied the Daniels house, as he did from June to Christmas in 1923, using it as headquarters for his work as a tie maker. Though, for the most part, the following conclusion requested by appellants is only a repetition of what we have said in the original opinion, we again restate it at their special request:

"He was a widower, having two sons and a daughter. The daughter at that time was married. The younger son stayed on the premises and trapped during the winter until March, 1925, and again when the trapping season opened in November of that year, he went back and stayed at the place and trapped. From March to November of 1925, the younger son stayed with his father at the Hooks place, or Daniels place, and assisted in making ties. The older son was during that time in the State of Arkansas. The father and son returned to the premises and looked after it—the father's testimony being that he returned to the place as often as every ten or fifteen days and stayed all night, and the son's testimony being that he and his father went to the place once a week and sometimes twice a week and stayed all night and all day."

The facts as to appellee's house, upon the premises in controversy, being looked after and fastened during his absence in 1925, were about the same as in 1923, and will support the inference that they were locked and fastened. The fence around the little garden or patch was kept in repair and in condition for use.

As to whether Bumpstead's possession was hostile and under a claim of right while he occupied the premises was a controverted issue, and the defendants offered considerable testimony to show that the plaintiff did not claim the land as his own to hold for him-

self throughout the limitation period. The facts offered by appellee on these issues are summarized in the original opinion.

Except as to the additional conclusions of fact requested by appellants, their motion for rehearing is in all things overruled.