## Victoriano Zapeda v. Jacob Hoffman.

Decided January 28, 1903.

**1.—Limitations—State.**

Limitations do not run against the State.

**2.—Same—Conflicting Boundaries—Actual Possession.**

Where the boundaries in a deed conflict with an older or superior survey, there must be actual possession under the junior title of the part so in conflict in order for limitation to run in favor of the possession.

**3.—Same—Ten Years Possession—Character.**

Possession, in order to give title under the ten years statute of limitation, must be by acts done upon the land such as give unequivocal notice to all persons of a claim to it adverse to the claims of all others, whether the land be inclosed or not.

**4.—Same—Evidence.**

See evidence of possession held not sufficient to support title under the ten years statute of limitation.

Appeal from the Thirty-seventh District Court of Bexar. Tried below before Hon. John H. Clark.

*Bell & McAskill,* for appellants.

*Webb & Goeth,* for appellee.

JAMES, CHIEF JUSTICE.—Plaintiff, Hoffman, alleged that he is and was on March 31, 1901, owner and in possession of certain land in his inclosure, the same being all of survey 2½, in name of J. P. Alexander, and parts of surveys 176 1-10, H. Dohme, and No. 1, John B. McMichel. That on April 1, 1901, defendants Victoriano Zapeda and his wife Catarina Zapeda caused plaintiff's fence surrounding his said land to be cut; that plaintiff repaired it, and on April 7th defendants again cut it; that they threaten to again cut and destroy it, which threats he fears they will carry into effect; that defendants have been and are committing acts of trespass on plaintiff's said land, cutting wood therefrom, etc., to plaintiff's damage in certain sums; and that said acts were maliciously and oppressively done, for which he asks exemplary damages in a certain sum, and prays for injunction and damages.

It is not deemed necessary to state the pleadings further, except that defendants disclaimed as to the land described in the petition, except as to such as might conflict with the Thomas Perez 160-acre survey No. 405¾, which survey was conveyed by Thomas Perez to Victoriano Zapeda, in 1883, and which was paid for with the separate funds of defendant, Catarina Zapeda. As to this tract they also pleaded title by limitations. Plaintiff in turn pleaded res adjudicata.

It was admitted that plaintiff's title was from the State; that the Dohme title dated from May 24, 1874, the McMichel title from January 7, 1884, and the Alexander title from January 17, 1901. It was also admitted that title to same "is good in plaintiff and was so on March 31,

1891, and since then in all the land except in so far as same may be defeated by the claim of title of defendants to the Perez land described in the answer or in so far as defendant might establish superior title in himself by possession or other rights plead in his answer."

The following matters were in issue: Did defendants show the existence of title under the State to the Perez pre-emption survey, or a title by limitations, as against plaintiff's admitted title?

The evidence fails to show that title was obtained from the State to the tract described in the answer as purchased by defendants from Thomas Perez.

As to limitations, the facts are substantially that the land described in the deed from Perez to Victoriano Zapeda conflicted in part with a superior survey known as the Thomas Robinson survey, owned by defendant, and upon that part of the Perez tract in conflict with the Robinson defendants had all their improvements. The witness Modesto Torres testified that Zapeda pastured his cattle on the land, and had a field on it, and had been getting wood there ever since he bought it from Perez; that he moved on the land about seventeen years ago; that the improvements made by Zapeda are all on such part of the land and is also covered by the Thomas Robinson survey owned by Zapeda. Victoriano Zapeda testified that he moved on the Perez land about 1883; that it had been his home ever since then; that he has ever since used the land for a pasture for his cattle, got water from the Pastores spring at the northwest corner of the Perez land at a place not on the Robinson land. That he did not remember the date he moved on the land; it was about seventeen years ago. (The trial was in 1902.) That his improvements are entirely within the Robinson survey, which he owned. Jesus Zapeda testified that he was one of the chainbearers when Thomas Perez had the land surveyed for a pre-emption. Perez lived there about three years. Victoriano Zapeda bought it in 1883, and moved on it. He got water from the Pastores spring for home use, and watered his cattle there. He grazed his cattle on the land. He cut wood on the Perez land for home use and for market. The improvements made by Victoriano Zapeda are on the land included in the Thomas Robinson survey, and also the Perez survey.

It was embraced in an admission that the improvements made by Victoriano Zapeda were upon land covered by the Robinson survey and the Perez claim, and not upon land described in plaintiff's petition, and also, substantially, that defendant had committed the acts charged, and that plaintiff was entitled to the injunction prayed for unless said land is owned by defendants.

There is a sketch made a part of the judgment, which is omitted from the original transcript, but an agreement has been filed, to save a writ of certiorari, which makes a transcript heretofore filed for an affirmance on certificate a part of the record in this appeal, which shows the judgment and the map which is a part of it. We here copy the map, the

dotted lines being added by us in order to show approximately the situation of the Perez tract with reference to the adjacent surveys.

From this sketch it will be noticed that the Perez tract overlapped in part the Robinson, the Dohme, the McMichel and the Gulf, Colorado & Santa Fe Railway Company surveys. It also shows the position of the Pastores spring, which one of defendants' witnesses states is at the northwest corner of the Perez boundaries, but this is evidently a mistake, as the sketch shows this spring to be the southwest corner and within the conflict of the Perez with the Dohme survey.

As to the Alexander tract, defendants clearly have no title by limitations, because it appears that until 1901 it was State land, and against the State the statute does not run.

Did defendants show such possession of the portions of the Dohme

and McMichel surveys, over which the lines of the Perez extended, as would support a claim of title by limitations. Zapeda's use of part of the Perez tract (that conflicting with the Robinson) was undoubtedly sufficient in character to satisfy the statute, and constituted constructive possession to the whole, under ordinary conditions. Taliaferro v. Butler, 77 Texas, 578; Cantagrel v. Von Lupin, 58 Texas, 570. But this doctrine of constructive possession ceases to apply where the boundaries in defendant's deed conflict with an older or superior survey. Parker v. Baines, 65 Texas, 605; Turner v. Moore, 81 Texas, 209, and cases there cited; also Allen v. Boggess, 94 Texas, 85. In such a case actual possession must exist with regard to what is thus in conflict.

It is observed that defendant's evidence shows that the Zapedas had all their improvements on that corner of the Perez tract which lay over the Robinson survey; and we infer from this that they had no fences on the remainder; that they used the tract generally for grazing their cattle

and cutting timber thereon; and that they used the Pastores spring for stock water and for their homestead purposes. The map shows another spring on the corner of the tract where the improvements are situated, and a proper inference is that that spring was also used by them for said purposes. We find no evidence that the deed from Perez to Zapeda was ever recorded, although that fact was alleged by defendants. If it might be said that there was some evidence that the Zapedas had the land fenced, there was none to show how long it had been fenced. The statute relied on was that of ten years.

Under the decisions in this State this evidence was not sufficient to show actual possession of the land inside the conflict with the Dohme and McMichel surveys, such as the statute contemplates. Fuentes v. McDonald, 85 Texas, 135; Sellman v. Hardin, 58 Texas, 86; Murphy v. Welder, 58 Texas, 241. As is stated in Richards v. Smith, where the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it, adverse to the claim of all others, and this is accompanied by an actual possession exclusive in its character, then limitations will run in favor of the person so asserting adverse claim and enjoying an exclusive possession from the time such occupancy began, whether the land be inclosed or not. The testimony does not approach these requirements, and there was no attempt to show that what use defendants had made of the land outside of that actually occupied by them had been exclusive, nor its extent. We therefore conclude that the testimony warranted finding against defendants' claim of title by limitations to any of the land described in the petition, and that under the agreements plaintiff was entitled to the injunction.

It is not necessary, in this view of the case, to investigate alleged error in reference to the issue of res adjudicata. The case was tried by the judge without a jury, and there are no conclusions on file. In this state of the record the judgment should be affirmed, if correct on any theory of the evidence. Walker v. Cole, 89 Texas, 323.

*Affirmed.*

Writ of error refused.