ALLISON et al. v. CALIFORNIA PETROLEUM CORPORATION OF VENEZUELA et al.

No. 5832.

Court of Civil Appeals of Texas. Texarkana.

Dec. 31, 1941,

Rehearing Denied Jan. 8, 1942.

S. J. Dotson, Cecil Storey, and Perry Meredith, all of Longview, and Fred V. Hughes, of Tyler, for appellant.

H. S. Garrett, of Fort Worth, Wynne & Wynne and Henry H. Harbour, all of Longview, and Weeks, Hankerson & Potter and Russell Surles, all of Tyler, for appellee.

WILLIAMS, Justice.

Pleading a trespass to try title action in statutory form, appellants, plaintiffs below, J. F., W. C., and Betty Allison, and the children of Zella (Allison) Collins, deceased, sued appellees, defendants below, Charles B. Johnston, alleged fee owner, and California Petroleum Corporation of Venezuela, and the Texas Company, alleged lease holders, to recover a 4/7 undivided interest in a certain undivided ½ interest in 22½ acres of land out of the J. R. Crosby Survey near Gladewater, Texas, and for a like interest in the proceeds of oil theretofore produced from the premises. All defendants respectively pleaded not guilty, general denial, and title under the 5, 10 and 25 year statutes of adverse possession and limitation, Articles 5509, 5510 and 5519, R.C.S. of 1925, Vernon's Ann.Civ.St. arts. 5509, 5510, 5519. Other defenses urged will not be detailed. In a cross action, the Texas Company prayed for its title to be quieted. In response to the nine special issues submitted, the jury found that each defendant had matured title under the 5, 10 and 25 year statutes of limitation; and upon such findings the court entered judgment that plaintiffs take nothing, and the cloud cast upon the title of the Texas Company by the claim of plaintiffs be removed.

Appellants' points attack principally the court's charge. Such portions of the charge pertinent to the complaints made, and the evidence which bears upon such of the points to be discussed, will be detailed.

In a deed, dated November 2, 1898, duly filed for record, one Wm. Sheppard purports to convey to D. P. Allison a 24½ acre tract of land, the description of which includes the land in controversy. If title to the tract passed by virtue of this deed, the land became the community property of D. P. Allison and his wife, Renzia. Born of this union were five children, namely, Zella in April 1889, Betty in September 1891, J. R. in December 1893, W. C. in April 1895, and J. F. in April 1899. Zella married Ray Collins in 1908, and she and her husband died in January 1919, leaving four children who have joined in this suit. J. R. Allison and two children of D. P. Allison by a second marriage are not parties to the suit. Renzia Allison died June 15, 1899, intestate. Thereafter under a guardian's deed dated December 10, 1904, executed pursuant to orders theretofore granted in the probate court, the validity of which was not attacked in the trial court, J. L. Mackey, as guardian of the persons and estate of Zella, Betty, J. R., W. C. and J. F. Allison, conveyed to Mrs. Mary Victory the minors' purported ½ interest in the tract in controversy for a recited consideration of $135. This deed was filed for record in September 1905. At the time this deed was executed, the children were making their home with their grandmother, Mrs. Victory, the grantee named. D. P. Allison died in August 1914, intestate. Four-sevenths of the alleged undivided ½ interest of D. P. Allison is here sought to be recovered by appellants.

A deed dated July 11, 1907, filed for record January 25, 1908, which recites a cash consideration of $500, and contains a general warranty of title, executed by Mary Victory and husband, purports to convey to Mrs. Annie Beamer the entire 24½ acre tract of land. A deed filed for record in October 1916, executed by Mrs. Beamer and husband, with general warranty of title, purports to convey to O. G. Johnston two acres, described by metes and bounds, out of the southwest corner of the original 24½ acre tract, leaving the 22½ acres here involved. A deed dated April 23, 1923, filed for record October 4, 1923, containing a general warranty of title, executed by the Beamers, purports to convey to appellee Charles B. Johnston all the 22½ acres in controversy. The other appellees hold title as leaseholders under him.

In July 1907, the 24½ acres was enclosed on the north, east and west by fences of adjoining landowners. There is some controversy whether a fence enclosed the tract on the south at that time, but it is certain that, either later in 1907 or early in 1908, the fence of an adjoining landowner enclosed the tract on its south. These fences thus enclosed the land from 1907 to 1931, when same were removed upon development of the land for oil. In July 1907 no part of the land had been put into cultivation. That year, after the Beamers acquired it, they began to clear portions of it and continued to so clear for several years. As we interpret the evi-

dence, the land cleared consisted of small fields, namely, 4 acres, 2 acres, and smaller plots aggregating eventually around 10 acres. It was the testimony of Mrs. Beamer, members of her family, adjacent landowners and neighbors that the Beamers planted and cultivated portions of the tract to feedstuffs for the family and their livestock, and that they gathered such crops therefrom each and every year from and including 1907 up to 1923, when they sold the land to Johnston. It is further in evidence that appellee Johnston made similar use of the premises each and every year until development for oil in 1931. Since 1931, the land has been used in the production of oil with derricks and buildings incidental thereto situated on same. The original fences above detailed served to enclose and protect the planted crops from depredations by livestock, there being no subdivision fences ever placed upon the property. No buildings were ever erected upon the premises prior to 1931. The Beamers and the Johnston families owned and resided upon other lands in the neighborhood and during their respective ownership went back and forth in the cultivation of the land in controversy. Taxes were paid on the land each year, before becoming delinquent, by Mrs. Beamer and her successors in title, covering the period from and including 1908 to and including the date suit was filed on September 20, 1935.

Under the testimony offered by plaintiffs they contend that the land was not cultivated and no crops made thereon in the years 1910, 1911 and 1912, 1916, 1917, 1923, 1929, and 1930; and that a tenant leased and worked only 2½ acres of the land in 1925 and 1931.

The court charged the jury:

"By the term 'adverse possession' is meant an actual and visible appropriation of the land, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another.

"By the term 'claim of right', as used in the main charge of the court, is meant that entry upon and possession of the land in controversy by defendants, or by those under whom they hold, shall have been with the intent to claim the land as his or her own, as the case may have been.

" 'Peaceable possession' is such as is continuous and not interrupted by adverse suits to recover the estate.

"The word 'hostile' as used in the special issue herein means a holding with intent to claim it as his own to the exclusion of all others.

" 'Paying taxes therein,' means paying from year to year as the taxes accrue and before they are delinquent, and includes all taxes assessed against the land.

"The term 'duly registered' means that such deed or deeds must have been filed in the office of the county clerk of Gregg County, Texas."

Special issues 1 to 6, inclusive, inquired about the 5 and 10 year limitation title urged by each appellee. Special issue No. 1 reads: "Do you find from a preponderance of the evidence that the defendant, Charles B. Johnston, and those through whom he holds conveyances, either in person or through a tenant or tenants, held peaceable and adverse possession of the land in controversy, continuously cultivating, using or enjoying the same and paying taxes thereon, and claiming under a deed or deeds duly registered for any consecutive period of five years prior to September 20th 1935? Answer Yes or No."

This is followed by the instruction: "In connection with the above issue and the next five issues, you are charged that if those inquired about held peaceable and adverse possession and used, cultivated or enjoyed the same or any part thereof under a deed duly registered or filed for record and recorded in the office of the County Clerk in which county this land is located, fixing the boundaries of the possessors' claim, such peaceable and adverse possession shall be construed to be co-extensive with the boundaries specified in such instrument."

Issues Nos. 2 and 3, identical in wording to No. 1, inquired about claim of the leaseholders under the same Article 5509. Issues Nos. 4, 5 and 6 inquired as to claim of the respective defendants under the 10 year limitation title, Article 5510. Issues Nos. 7, 8 and 9 inquired about the respective claims of defendants under Article 5519, the 25 year limitation title. Each of the first three issues closed with the phrase, "for any consecutive period of 5 years prior to September 20, 1935"; the next three each inquired about any consecutive period of 10 years prior to September 20, 1935, and the last three each inquired about any consecutive period of 25 years prior to September 20, 1935.

■ Under various points, appellants assert each of the first six issues ignored the uncontroverted evidence as to the respective periods of minority of plaintiffs; and that the jury findings thereon in the affirmative would not support a judgment for defendants grounded upon either the 5 or 10 year statutes of adverse possession and limitation since it could not be known or ascertained under the terms of such issues whether the consecutive periods of 5 and 10 years inquired about, if any, did in fact exist during such period as to be effective against the respective plaintiffs. In short, it is their position that such issues should have made inquiry and findings had thereon as to the beginning date respectively of said consecutive periods of 5 and 10 years. In response to No. 7 the jury found that appellee Texas Company and those under whom it claims had held peaceable and adverse possession of the land in controversy continuously for a period of 25 years prior to September 20, 1935, with deeds on record for such period of time. Similar findings as to the other appellees were made. The minimum period of 25 years under the findings to Nos. 7 and 8 would have had to begin on September 20, 1910. D. P. Allison, under whom appellants claim by inheritance, did not die until August 1914. Consequently the answers of the jury under the 25 year statute is the finding that the adverse possession began during the lifetime of D. P. Allison. Having so begun, under the findings of the jury, it continued until this suit was filed. Moody v. Moeller, 72 Tex. 635, 637, 10 S.W. 727, 13 Am.St.Rep. 839; Huling v. Moore, Tex. Civ.App., 194 S.W. 188, 194, and authorities there cited. Consequently the question of minority of the appellants is of no consequence, and the failure of the court to submit to the jury inquiry as to the beginning date of any consecutive period of 5 or 10 years and to require findings thereon becomes immaterial.

■ Appellants contend that under the provisions of Article 5538, R.C.S.1925, the trial court, in the submission of the limitation issues, should have affirmatively instructed the jury that, in computing the time inquired about, they should not include the 12 month period immediately following the deaths of D. P. Allison in August 1914, and that of Zella Collins in January 1919. If limitation began to run against D. P. Allison in 1910 (if not earlier), as found in response to issues 7, 8 and 9, the deaths of Allison and Zella

Collins alone would not break the running of the statutes of limitation here involved. Moody v. Moeller, supra; Huling v. Moore, supra.

■ Appellants assert that the court erred in not excluding from the consideration of the jury the time elapsing between April 24, 1923, when the deed from Mrs. Annie F. Beamer et al. to appellee Johnston was executed, and the 4th day of October, 1923, when said deed was filed for record; that this was an unreasonable delay under the evidence as a matter of law. If this complaint be directed to the sufficiency of the registration of instruments to support affirmative jury findings under the provisions of Article 5519, the alleged delay in filing above deed, if it be conceded same was unreasonable, would not under the facts here destroy such findings. Free v. Owen, 131 Tex. 281, 113 S.W.2d 1221. It is without dispute that the deed into Mrs. Beamer went of record in January 1908. And under the evidence offered by appellees she and her successors in title (appellees) have held peaceable and adverse possession continuously since such date. The alleged delay of recordation in 1923 into Johnston becomes immaterial in testing the sufficiency of the evidence to support an affirmative finding under the 5 or the 10 year limitation, if either, for the latter began in 1910 if not earlier.

■ Points 18, 19 and 20 assert that the court erred in instructing the jury that the possession and use, cultivation or enjoyment of a part of the land would constitute adverse possession of the entire tract described in the deed. The instructions complained of, above set out verbatim, relate to the first six issues. Such instructions correctly stated the law. Yarborough v. Mayes, 41 Tex.Civ.App. 446, 91 S.W. 624; Thomas v. Southwestern Settlement & Dev. Co., Tex.Civ.App., 131 S.W.2d 31, and authorities there cited. While not expressly approving the action of the court in so incorporating the clause complained of in the charge, it is thought no reversible error is shown under the facts of this record. Points 21, 22 and 23, closely related to the foregoing complaint, likewise are respectfully overruled.

■■ Issues Nos. 1 to 6, inclusive, each contained the phrase as set out in issue No. 1, namely, " * * * held peaceable and adverse possession * * * continuously cultivating, using or enjoying the same * * *." Issues Nos. 7, 8 and 9 each con-

tained a phrase of similar import, namely, "* * * held peaceable and adverse possession * * * continuously for any period of 25 years * * *." In defining the term "continuously" used in the issues, the court instructed the jury: "A temporary cessation in the cultivation, use or enjoyment of the land or a part thereof, during the time intervening between the gathering of a crop and the preparation for or planting of a crop the following season would not constitute any failure to continuously cultivate, use or enjoy the land." Appellants under points 15, 16 and 17 assert that the court erred in so instructing the jury, "in that this was upon the weight of the evidence, and took away from the jury the right to say from the evidence whether the use of the land was such as to constitute adverse possession." The issues as framed containing the term "continously" taken in connection with the other legal terms given by the court were favorable to plaintiff and more than legally required to submit either limitation issue. The definition of the term "continuously", so given, was the result of such term being used in the issues. The action of the court in so defining the term "continuous" is not to be recommended, but in view of the unnecessary employment of such term in the issues, the position taken by litigants in the trial court and the facts under the record, it is not thought sufficient to warrant a reversal of the judgment rendered. Under the testimony offered by defendants, a crop was planted, cultivated and gathered each and every year, from and including 1907, until 1931, by appellees and those under whom they hold. A crop was growing on the land in 1931 when the leaseholders began operations to drill for oil. Under evidence offered by plaintiffs, they took the position that in certain years no crops were planted, cultivated or gathered. If defendants and those under whom they hold planted, cultivated and gathered crops of corn, potatoes, peanuts and truck, each and every year, as they contend, it is thought that a temporary cessation between the time of gathering such crop and the preparation for or planting of such crop the following season would not break the continuity of such possession. Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265, 268; Hardy v. Bumpstead, Tex.Com.App., 41 S.W.2d 226, 76 A.L.R. 1488.

Points 35 and 36 relate more to the weight of certain evidence than its admissibility and are overruled. The other points brought forward and not discussed have been considered and are overruled. The conclusion herein reached eliminates the necessity of a discussion or consideration of the counter points advanced by appellees.

The judgment is affirmed.