## HUFSTEDLER v. SIDES et ux.

### No. 7474.

Court of Civil Appeals of Texas. Amarillo.
Oct. 19, 1942.

Rehearing Denied Nov. 23, 1942.

Nelson & Brown, of Lubbock, for appellant.

Bean, Evans & Croslin, of Lubbock, for appellees.

JACKSON, Chief Justice.

This is a suit in trespass to try title instituted in the District Court of Lubbock County by H. H. Sides and wife, Christine Sides, against G. D. Hufstedler to recover two certain tracts of land aggregating about 155 acres fully described in their petition by metes and bounds.

In addition to the count in trespass to try title appellees alleged that they had acquired and held title under and by virtue of having complied with the requirements of the five year statute of limitation. Vernon's Ann.Civ.St. art. 5509.

The appellant answered by general denial and plea of not guilty.

A jury was demanded, selected, empanelled and sworn and when each side closed his testimony the following proceedings were had: Mr. Bean, the attorney for appellees, said, "I have no issues other than a motion for instructed verdict." Mr. Brown, the attorney for appellant, replied, "We don't have any issues except a motion for an instructed verdict.

"The Court: Let the record show that both parties, plaintiff and defendant, filed motions for an instructed verdict and that neither party has anything further to submit to the Court. The case is to be withdrawn from the jury and the Court calls upon both parties for any law they care to submit and for them to prepare and to submit to this court comprehensive briefs covering all questions involved.

"Mr. Brown: Unless the Court grants our instructed verdict we don't waive a jury.

"The Court: The Court holds that you have already waived a jury, automatically."

The appellant urges as error the action of the court in holding that where each party presents a motion for an instructed verdict the case is automatically withdrawn from the jury and the jury waived.

■ It is apparently settled in this State that the respective motions of each party for a peremptory instruction in his behalf is not a waiver of his right to have any fact issues raised by the testimony submitted to the jury and the ruling of the court to the effect that the appellant waived the jury is error. Rule 289, Vernon's Texas Rules Civil Procedure; Citizens' National Bank of Brownwood v. Texas Compress Co., Tex.Civ.App., 294

S.W. 331; Long Bell Lumber Co. v. Futch et al., Tex.Civ.App., 20 S.W.2d 1076.

While this ruling we think error, the appellees contend that if such ruling was error it does not constitute reversible error because no other judgment could have been rendered on this record and the court was warranted to peremptorily instruct the jury to find in his behalf. Stallings v. Federal Underwriters Exchange, Tex.Civ.App., 108 S.W.2d 449, 452.

The appellant challenges this contention of appellees, claiming that the trial court erred in admitting in evidence, over his objection, the sheriff's deed purporting to convey the land to the General American Life Insurance Company and the deed from the General American Life Insurance Company to H. H. Sides and Christine Sides for the reason that each of said deeds is void on its face and does not constitute a deed duly registered within the meaning of the statute of limitation of five years. It may be conceded that the sale of the land by the sheriff to the insurance company was invalid, since after the sheriff advertised the land for sale on February 6, 1934, the first Tuesday in said month, the sale was suspended by the moratorium statute passed by the Forty-third Legislature of the State of Texas, 1934, 2d Called Sess., c. 2, Vernon's Ann.Civ.St. art. 2218b note, and the land was not sold until March 6, 1934 and was not re-advertised for sale.

■ In Sharber v. Florence, 131 Tex. 341, 115 S.W.2d 604, the Supreme Court passed on this precise question and held that a sale made under the moratorium statute without re-advertising was invalid and void, nevertheless, the sheriff's deed was regular on its face and purports to convey title to the land therein described and a careful reading of this sheriff's deed fails to disclose the defect therein, which renders the sale invalid.

In Davis et al. v. Howe, Tex.Com.App., 213 S.W. 609, 610, the court says: "For the purpose of limitation, it is wholly immaterial that the deed conveys no title. An instrument in the form of a deed not void on its face, even though the grantor be wholly without title, satisfies the requirement of the statute. Wofford v. McKinna, 23 Tex. 36, 76 Am.Dec. 53; Schleicher v. Gatlin, 85 Tex. 270, 20 S. W. 120." To the same effect is the holding in Holt et al. v. Holt, Tex.Civ.App., 59 S.W.2d 324, writ refused.

The deed from the General American Life Insurance Company to H. H. Sides and wife is attacked by appellant for the reason that it shows to have been executed by its vice president and attested by its secretary when the statute requires that a corporation may convey lands by deed sealed with its common seal and signed by the president or presiding member or trustee of said corporation. In considering the party named in the statute as qualified to execute a conveyance for a corporation in which the vice president had acted, the Supreme Court in Ballard et al. v. Carmichael et al., 83 Tex. 355, 18 S.W. 734, 739, construing what is now Article 1322, Vernon's Annotated Texas Civil Statutes, says: "We may safely assume to know judicially that a vice-president, in the common acceptation of that term, is an officer designated for the purpose of performing the functions of the president when for any reason the latter cannot act. In case of the absence of the president, or of his inability for any reason to perform the function of his place, as a very general rule, at least, the vice-president becomes invested with his powers and responsibility. In such contingencies the vice-president is in fact and in law the president in all except the name. He certainly becomes 'the presiding member' of the corporation. When, therefore, a deed is produced, signed by the vice-president of the corporation, and sealed with its seal, we think, in the absence of evidence to the contrary, it should be presumed that the contingency has arisen which authorized the vice-president to act, and that he is to be deemed pro hac vice the presiding member of the corporation." To the same effect is the holding in Thomason et al. v. Pacific Mut. Life Ins. Co. of California, Tex.Civ.App., 74 S.W.2d 162, writ refused.

This deed was executed in 1935 and recorded in 1936 and the last amendment to the statute, while we do not think it would invalidate this conveyance, in any event, is too late to have any effect thereon.

The appellant assails the sufficiency of the testimony to show conclusively that appellees paid the taxes on the land involved in this controversy for a period of five consecutive years without allowing the taxes to become delinquent any year.

The tax receipts were introduced showing that H. H. Sides paid the taxes to the state, the county and also to the Roosevelt Rural High School District No. 4, in which the land was situated, and the receipts disclose that the taxes were paid each year from 1936 to 1941, inclusive, before they became delinquent but they did not describe the land by metes and bounds but each receipt reveals that it covered 313 acres which was part of Section 44 in Block 1, Lubbock County. Mr. Sides testified that he and his wife owned 313 acres in Section 44, Block 1 in said county and that he paid the taxes on the 313 acres of land covered by the tax receipt offered in evidence and that the payments were made each year before the tax became delinquent. Mr. H. B. Bryan, the tax collector of Lubbock County, testified that he had held the office of tax collector since September 1, 1937 and was deputy tax collector from October 1, 1930 until he was elected collector; that from an examination of his records and the tax receipts offered in evidence he could say that appellees had paid all the state, county and school taxes on the land owned by them in Section 44, Block 1, Lubbock County, for the years from 1936 to 1941, inclusive, and the payments had been made each year before the taxes became delinquent; that the land was not located in any taxing unit or subdivision in the State of Texas except the County of Lubbock and the Roosevelt Rural High School District No. 4. This testimony is undisputed and we think shows with certainty that the appellees had paid the taxes as required by law to mature title under the five year statute of limitation.

The appellant urges as error the action of the court in discharging the jury and rendering judgment against him because he contends the testimony as to whether or not appellees had held peaceable and adverse possession of the land, cultivating, using and enjoying the same continuously for a period of five years was not so definite and conclusive that reasonable minds might not differ thereon.

The record shows that the land was not enclosed and had no house thereon and that appellees had never resided thereon but lived on an adjacent tract. This is not necessary since a claimant under the statute of five year limitation may mature his title thereto without actually residing on the land. F. J. Cantagrel et al. v. Anna Von Lupin, 58 Tex. 570. Neither is it necessary that the land be enclosed.

In Zepeda v. Hoffman, 31 Tex.Civ.App. 312, 72 S.W. 443, 445, writ denied, the court says: " * * * where the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it adverse to the claim of all others, and this is accompanied by an actual possession exclusive in its character, then limitations will run in favor of the person so asserting adverse claim and enjoying an exclusive possession from the time such occupancy began, whether the land be inclosed or not." See also Smith et al. v. Minor et al., Tex.Civ.App., 50 S.W.2d 405, 407.

The record shows that the General American Life Insurance Company purchased the land at a sheriff's sale on March 6, 1934; that its deed was filed and recorded on March 22d following in Volume 184 of the Deed Records of Lubbock County; that the appellees rented the land from the General American Life Insurance Company in March 1934, prepared it and planted it to cotton and maize, which crops were cultivated but, on account of the drought, no crops matured that year; that he rented and farmed the land in 1935, made a crop, harvested it and paid the agreed rent to the General American Life Insurance Company; that in the fall of 1935 he purchased the land for $30 per acre, which he paid, received his deed dated December 2, 1935, and had it recorded in the Deed Records of Lubbock County on January 6, 1936; that he cut the weeds, listed the land in February or March, knifed the beds once or twice before planting; planted the land to maize and cotton in May or June each year; cultivated the crops, which he laid by in the latter part of July or the first of August; when the crops matured he harvested them, beginning ordinarily in October or November and finishing sometimes about the middle of November but sometimes as late as January thereafter; he farmed the land in this way every year from 1936 to 1941, inclusive; that while not engaged in preparing, planting, cultivating or harvesting he was on the land only occasionally but resided on the tract adjacent to that in controversy; that appellees collected the Government checks for soil conservation practices and the parity checks each year; that he always claimed the land and that no one at any time claimed any part of the Government checks or any rent off the land or asserted in any way any right thereto.

In Dunn (Tackaberry, Intervener) v. Taylor et al., 102 Tex. 80, 113 S.W. 265, 268, Judge Williams, speaking for the Supreme Court, says: "When yearly crops are raised, it may be that actual occupancy of a tenant for the time between the harvesting of one crop and the preparation for another should not be held to be essential. In such cases the appearances on the land itself would probably show the purposes for which it is being used."

In Allison et al. v. California Petroleum Corporation of Venezuela et al., Tex.Civ. App., 158 S.W.2d 597, 601, writ refused for want of merit, the trial court instructed the jury: " 'A temporary cessation in the cultivation, use or enjoyment of the land or a part thereof, during the time intervening between the gathering of a crop and the preparation for or planting of a crop the following season would not constitute any failure to continuously cultivate, use or enjoy the land.' "

This charge was attacked because upon the weight of the evidence and took from the jury the right to determine from the evidence whether the use of the land constituted adverse possession. The court held that the charge was correct and stated: "If defendants and those under whom they hold planted, cultivated and gathered crops of corn, potatoes, peanuts and truck, each and every year, as they contend, it is thought that a temporary cessation between the time of gathering such crop and the preparation for or planting of such crop the following season would not break the continuity of such possession. Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265, 268; Hardy v. Bumpstead, Tex.Com.App., 41 S.W.2d 226, 76 A.L.R. 1488."

Under this testimony and the authorities above cited, in our opinion, the court did not commit reversible error by discharging the jury and rendering a judgment in favor of appellees.

The judgment is therefore affirmed.