**HUFSTEDLER et al. v. BARNETT et ux.**

No. 5632.

Court of Civil Appeals of Texas. Amarillo.
June 19, 1944.

Rehearing Denied Oct. 9, 1944.

Nelson & Brown, of Lubbock, for appellants.

Bean, Evans & Croslin, of Lubbock, for appellees.

STOKES, Justice.

This is an action in trespass to try title to 155 acres of land in Lubbock County. The record reveals that S. M. Hufstedler owned the land in 1916, and on November 22, 1916, he encumbered it by a deed of trust to secure an indebtedness of $5500, evidenced by a note payable to Temple Trust Company. By various assignments of the indebtedness and deed of trust lien, they ultimately became the property of General American Life Insurance Company, and on November 20, 1933, in a suit filed by that company in the District Court of Bell County to recover on the note and foreclose the lien, judgment in its favor for the sum of $6638.22 was rendered against S. M. Hufstedler and the deed of trust lien was foreclosed. From that judgment Hufstedler perfected an appeal to the Court of Civil Appeals at Austin. On May 1, 1935, the judgment of the lower court was affirmed and in due time a motion for rehearing was overruled and an application for a writ of error denied. Hufstedler v. General American Life Ins. Co., Tex.Civ. App., 82 S.W.2d 759.

Hufstedler not having filed a supersedeas bond in his appeal, an order of sale duly issued out of the District Court of Bell County on December 26, 1933, under which the sheriff of Lubbock County levied upon the land and advertised it for sale on February 6, 1934. In the meantime the Legislature enacted a moratorium statute, Article 2218b, Vernon's Ann.Civ.St.,

in which it was provided that execution sales advertised to take place on February 6, 1934, should be stayed for a period of thirty days and that all such sales might be made on the first Tuesday in March 1934 without the necessity of re-advertising them. The sheriff of Lubbock County had duly advertised the land for sale on February 6, 1934, and in obedience to the moratorium statute he postponed it until the first Tuesday in March 1934 and did not re-advertise it. On March 6, 1934, the sheriff proceeded to execute the order of sale by offering the property for sale at public vendue at the courthouse door of Lubbock County and it was sold to the General American Life Insurance Company for the sum of $3000. Pursuant to the sale, the sheriff immediately executed a deed in due form, conveying the property to the purchaser, and the deed was duly recorded in the deed records of Lubbock County on March 23, 1934.

For several years prior to the foreclosure of the deed of trust and sheriff's sale, J. B. Anderson, a son-in-law of S. M. Hufstedler, had occupied and cultivated the land as Hufstedler's tenant, and on March 22, 1934, a rental contract was entered into between the General American Life Insurance Company and J. B. Anderson for the remainder of that year. Instead of relinquishing possession at the termination of his rental contract on January 1, 1935, Anderson held over and refused to give possession, whereupon the General American Life Insurance Company filed in the District Court of Lubbock County a suit against him in trespass to try title and recovered judgment on May 20, 1935. Anderson perfected an appeal from the judgment to this Court, executing and filing a supersedeas bond under which he held possession until March 1, 1936, at which time he vacated the premises. The judgment was affirmed by this Court April 13, 1936.

On December 23, 1935 the General American Life Insurance Company sold and conveyed the land to the appellee, Ted Barnett, and S. M. Hufstedler having died January 17, 1938, Barnett filed this suit on September 20, 1941, against his surviving wife, E. B. Hufstedler, and his heirs, including four grandchildren. In addition to the ordinary plea in trespass to try title, Barnett set up the five-year statute of limitation and adverse possession under Article 5509, R.C. S., all of which were resisted by the defendants upon grounds to be later discussed.

A jury was impaneled to try the case, but at the close of the testimony, upon motion of the appellee, the court instructed the jury to return a verdict in appellee's favor, and upon the return of such verdict the court entered judgment decreeing to appellee the title and possession of the land in controversy. Appellants duly excepted to the judgment, gave notice of appeal, and have perfected their appeal to this Court where they assail the judgment upon a number of assignments of error, which we think may be reduced to two controlling issues.

Appellee makes no serious contention that his grantor, the General American Life Insurance Company, procured a valid title under the sheriff's deed, and indeed such a contention could not be maintained because the sale was advertised for February 6, 1934, and actually took place March 6, 1934, without being re-advertised as provided by law. The moratorium statute under which the sheriff postponed the sale for thirty days was held to be unconstitutional and a sale made after a postponement of thirty days, without again publishing the notices as required by law, was held by the Supreme Court to be void. Sharber v. Florence, 131 Tex. 341, 115 S. W.2d 604. However, the sheriff's deed was regular in form, duly registered, and therefore constituted a sufficient basis for the establishment of title by limitation under the five-year statute. Hufstedler v. Sides, Tex. Civ.App., 165 S.W.2d 1006.

The two contentions presented by appellants which we think must control our disposition of the appeal are, first, that the court erred in giving to the jury a peremptory instruction and in rendering judgment against them because, under the evidence, the appellee and his predecessor in title, the General American Life Insurance Company, did not have peaceable and adverse possession of the land for five years as contemplated by Article 5509, R.C.S.1925, commonly known as our five-year statute of limitation; and, secondly, that appellee and his predecessor in title had not, during the five years' adverse possession claimed by him, paid the taxes on the land as contemplated by the Article mentioned.

Under the circumstances revealed by the record, it was necessary that appellee establish peaceable and adverse possession of the land for a period of six consecutive years instead of five, because the asserted adverse possession commenced during the lifetime of S. M. Hufstedler, who died January 17, 1938, before the five-year period was completed, and no administration was had upon his estate. Under the provisions of Article 5538, R.C.S. 1925, the law of limitation was interrupted as against him and his heirs on the day of his death and was suspended for twelve months thereafter. Meurin v. Kopplin, Tex.Civ.App., 100 S.W. 984; Stevenson v. Barrow, Tex.Civ.App., 265 S.W. 602.

As we have stated, J. B. Anderson occupied and cultivated the land as the tenant of S. M. Hufstedler for several years prior to the foreclosure proceeding, but on March 22, 1934, shortly after the sheriff's sale and execution of the sheriff's deed to the General American Life Insurance Company, Anderson rented the land from the life insurance company for the rest of the year 1934. The rental contract was in writing and provided that Anderson would plant the land to cotton and other crops, that he would harvest the crops in due season, and deliver to the life insurance company one fourth of the cotton and one third of all other crops grown on the land during that year. It further provided that at the expiration of the rental term he would deliver possession of the premises to the life insurance company in good condition, excepting only reasonable use and ordinary wear and tear. If, by the execution of the rental contract, Anderson became the tenant of the General American Life Insurance Company, the occupancy and possession of the land by Anderson thereby became the occupancy and possession of the life insurance company, and it follows that appellee established title under the five-year statute of limitation in so far as possession was concerned, because the rental contract was executed March 22, 1934, which was more than seven years before the suit was filed September 20, 1941, and there was no interruption in the actual possession of the life insurance company nor of the appellee after the date of the rental contract and before the suit was filed. Making allowance for the twelve months during which their legal possession was suspended under Article 5538, there is still left more than six years during which they had both actual and legal possession.

Appellants assert that Anderson's possession and occupancy of the land was not adverse to S. M. Hufstedler, because,

according to Anderson's testimony, he and Hufstedler had discussed the matter of Anderson's renting the land from the life insurance company and had decided that in the event Hufstedler was successful in his appeal in the foreclosure suit, which was then pending in the Court of Civil Appeals at Austin, it would be easier for them to hold possession of the land and that Hufstedler wanted him to remain in possession as long as the appeal was pending. In other words, appellants contend, in effect, that the undisputed testimony shows that Anderson rented the land from the life insurance company with the mental reservation that he would hold possession for Hufstedler and that, therefore, his possession was not adverse to Hufstedler. We cannot agree with appellants in this contention. It is true that attornment by a tenant to a stranger without the consent of the landlord under whom he entered, and not pursuant to, or in consequence of, the judgment, order, or decree of a court, is void and the holding of a tenant so attorning will be treated as the possession of the person under whom he entered. Cobb v. Robertson, 99 Tex. 138, 86 S.W. 746, 122 Am.St.Rep. 609. It is equally true, however, that an attornment by a tenant to one other than his original landlord is valid and changes the tenancy from one between the tenant and his original landlord to one between him and the attornee if it is made with the consent of the original landlord. Houghton v. Kern Valley Bank, 157 Cal. 289, 107 P. 113; Hanson v. Sommers, 105 Minn. 434, 117 N.W. 842.

The testimony in this case shows clearly that S. M. Hufstedler not only knew of the rental contract entered into by his son-in-law Anderson with the General American Life Insurance Company, but that he assented thereto. Anderson testified, without dispute, that he and Hufstedler discussed the matter a number of times and that Hufstedler decided that Anderson should hold possession of the land because it would be easier to hold possession than it would be to regain it after having relinquished it, in the event Hufstedler should be successful in his appeal of the foreclosure suit then pending in the Court of Civil Appeals at Austin. It is true, Anderson claimed he held possession during the year 1934 for that purpose. It is also true, however, that his possession of the land was under, and dependent upon, his contract of tenancy with the life in-

surance company, in which he acknowledged that company to be the owner of the land, agreed to occupy and cultivate it as the company's tenant, and to pay the rental to it. Having thus become the tenant of the life insurance company under a solemn contract in writing, with the consent of his original landlord, Anderson was estopped from claiming that he was holding the land for someone else, and Hufstedler was in no position to assert an estoppel against Anderson, because he acquiesced in and agreed to the contract of tenancy. Regardless of Anderson's secret intentions or mental reservations to the contrary, he was bound by his contract, and it follows that the possession of the General American Life Insurance Company began on the day Anderson became its tenant. The tenancy and adverse possession of the life insurance company as against Hufstedler began on or about the same time, because Anderson testified, without contradiction, that during the whole time covered by his rental contract with the company, it was Hufstedler's desire that he hold possession because it would be easier to hold possession than to regain it in the event Hufstedler was successful in his appeal.

J. B. Anderson testified that he discussed the nature of his possession with Kelly Polk, a representative of the life insurance company, and told him that he did not intend to give up possession until the appeal pending in the Court of Civil Appeals at Austin was settled. Appellants contend that this constituted notice to the life insurance company of the nature of Anderson's possession and that he was holding the land, not for the life insurance company, but for S. M. Hufstedler. Anderson did not say when he discussed the matter with Polk nor that Polk, or anyone else representing the life insurance company, had any information concerning his attitude until after the rental contract had been executed by him with the life insurance company. It probably happened after the rental contract had expired, because Anderson refused to give up possession of the land at the termination of the written contract and it is not likely that any discussion of that matter would have arisen until the time arrived for Anderson to vacate the premises according to the terms of his rental contract. Moreover, in his answer to the life insurance company's suit in trespass to try title, filed in the

District Court of Lubbock County after the expiration of the rental contract, Anderson alleged that he never had, and did not then, deny plaintiff as his landlord, but that he had at all times, and did then, recognize the plaintiff as his landlord and had been, and was then, ready to attorn to it as such. The answer was filed May 3, 1935, and, according to its allegations, Anderson was not at that time contending he was holding the land for Hufstedler but acknowledged his occupancy under the rental contract and that he was holding the land for the life insurance company. It is evident, therefore, that if he told Polk, the agent of the life insurance company, that he was holding possession for Hufstedler, it was after he filed the answer in the trespass to try title suit which the company had filed against him. However this may be, Anderson could not, by his mental attitude, change the nature of his occupancy or possession under the law as tenant of the life insurance company, after having executed the contract of tenancy. He was bound by the contract which he executed and any adverse mental reservation, even though it had been communicated to the life insurance company, would not have destroyed his obligation and position as a tenant that was created by the contract. We find no error revealed under appellant's first contention and it will be overruled.

In reference to the payment of taxes, the record reveals that taxes became delinquent for the years 1932, 1933, and 1934. Two of those years were prior to the foreclosure proceeding and the execution of the sheriff's deed conveying the land to the life insurance company, and the delinquent taxes were not paid until August 28, 1935. The life insurance company paid the taxes which accrued for the year 1935, however, on January 31, 1936, which was before they became delinquent, and the taxes were paid each year thereafter before they became delinquent. Appellant contends that it was necessary for appellee, or his predecessor in title, to pay taxes before they became delinquent in order to start the running of the statute of limitation. Article 5509, R.C.S.1925, provides that every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using, or enjoying the same and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after the cause of action shall have accrued and not afterwards. A cause of action against a trespasser accrues immediately after the trespass is committed. In this case the life insurance company took possession under its tenant, J. B. Anderson, on March 22, 1934, and if Hufstedler had a cause of action against the life insurance company, it accrued on that day. The life insurance company did not pay the taxes accruing for the year 1934 until after they became delinquent and, therefore, the period of time provided by the five-year statute did not begin during that year. It was still in possession of the land by its tenant Anderson on January 1, 1935, however, and the taxes accruing for that year, together with all subsequent years, were paid before they became delinquent. The life insurance company still being in possession on January 1, 1935, Hufstedler's cause of action, if he had one, still existed. If the peaceable and adverse possession of the land continued for five years, exclusive of the twelve months during which it was suspended by reason of the death of S. M. Hufstedler, and no taxes accruing after January 1, 1935, were permitted to become delinquent, compliance with the provisions of the statute was established, and although the taxes for prior years were still unpaid, title by limitation and adverse possession matured at the end of that period. We are therefore not in accord with appellants' second contention and it will be overruled.

The testimony upon the material issues in the case was without contradiction and, in our opinion, the court did not err in giving the peremptory instruction and rendering judgment for the appellee. The judgment will therefore be affirmed.